## JACKSON v. BEERS & DAVIES et als.

B. & D. contracted to furnish G. & S. also defendants, twenty-five thousand gallons turpentine, to be distilled by the latter. The contract was to end April 1st, 1857. B. & D. were not bound to deliver all the turpentine at once, nor any given quantity per day. Damages for non-delivery of turpentine fixed at three thousand seven hundred and fifty dollars, or fifteen cents per gallon. For accident to distillery, reasonable time to be allowed G. & S. for repairs. Distillery burned last of January, 1857, requiring eighteen days to rebuild. In January and March, 1857, G. & S. respectively assigned their interest in the contract to plaintiff. *Held*, that the benefit of the suspension of the works by the fire, inured to B. & D. as well as to G. & S.; that the time for performance of the contract was extended for the eighteen days; that, up to April 18th, 1857, G. & S. would be bound to receive turpentine; and, even if the assignment before this time did not put it out of their power to comply with their contract, at least, the assignee could not sue before the expiration of the extended time.

APPEAL from the Twelfth District.

Plaintiff appeals from an order setting aside a judgment entered for plaintiff on the report of a referee, and granting a new trial.

*John Reynolds*, for Appellant.

It is said the suit was prematurely brought; that the eighteen days which elapsed between the burning and the repairing of the distillery, must be held to extend the contract till the 19th of April.

There have been two demurrers in this case, and yet this was discovered, for the first time, on the trial before the referee.

The contract provides, that "during the continuance of this agreement, for any accident resulting to the distillery, a reasonable time is to be allowed said parties of the second part, for repairing the same;" and then follows the clause, "this agreement shall end on the first day of April, 1857."

The time allowed for repairing should not operate to extend the contract, for the reasons:

1. That the provision that the agreement should end on the first day of April, follows immediately after the clause allowing the time to repair, showing that it was not intended that it should operate to extend the agreement.

2. The time is expressly given to the parties of the second part.

The only question that can be made upon this, is whether the repairs were done in a reasonable time. The referee has found that they were done in a reasonable time.

The assignment of Gilbert to Jackson, on the 19th of March, it is insisted was a breach of the contract on the part of Gilbert & Stringer.

The assignment was only of his beneficial interest in the contract, and could not affect the relations existing between the parties to the original contract—Beers & Davies of the one part, and Gilbert & Stringer of the other part.

The referee finds that the contract was completely performed by Gilbert & Stringer, notwithstanding the assignment. (*Steam Nav. Co.* v. *Wright*, 8 Cal.)

The concluding objection of the counsel is based upon a wrong construction of the contract. It assumes that there was an obligation on the part of Beers & Davies to furnish a given quantity each day.

It was optional with them to furnish any quantity they pleased, (within the limits of four hundred gallons,) or to furnish none at all.

*Holladay & Cary*, and *Campbell*, for Respondents.

If the referee decided correctly, and the instrument was executed on or about the 3d of April, it was inoperative, because the contract was not assignable during its continuance. (2 Story's Eq. Jur. 1039; 13 Mass. 290; 10 Pick. 55; Story on Cont. Sec. 967; Id. 765 and Note.)

By the terms of the agreement it was to terminate on the 1st of April, but in case of accident to the distillery, a reasonable time for repairs was to be allowed. An accident did happen, and the repairs occupied eighteen days. This operated as an extension of the contract to the 19th of April. Up to that time Gilbert & Stringer could not assign. (*Fitch* v. *Boardman*, 3 Cal. 348; Labatt's R. 12 Dist. Court, July, 1857, p. 96.)

The assignment by Stringer to Jackson, of the 17th of January, was a breach of the contract. (16 Mass. 162; Chitty on Cont. 626; 1 Cow. 75; 2 Pick. 155; 5 Ohio, 333; Parsons on Cont. 188, 193; 3 Ad. & Ellis, 868, 883.)

In any event the suit was prematurely brought. According

Jackson *v.* Beers.

to the terms of the contract, the eighteen days occupied in re-
building the distillery, extended the contract to the 19th of
April. Yet this suit was brought on the 15th.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J.
concurring.

This suit was brought by the plaintiff against the defendants
on a contract. This contract was made by and between de-
fendants, Beers & Davies, and a firm of Gilbert & Stringer, also
defendants. By this contract, Beers & Davies agreed to furnish
Gilbert & Stringer twelve hundred and fifty cases (twenty-five
thousand gallons) of turpentine, which Gilbert & Stringer agreed
to distill into camphene for fifteen cents per gallon, and to distill
it at the rate of two hundred gallons per day, or less, for the first
fifteen days, after the 1st of December, 1856 ; and at the rate of
four hundred gallons, or less, per day, after the expiration of said
fifteen days ; and that it should be at the option of Beers & Davies
to furnish to Gilbert & Stringer, for distillation as aforesaid, such
quantity of turpentine each day as Beers & Davies might desire
and determine to furnish, and have a right to require the distill-
ing of any more than two hundred gallons per day, for the first
fifteen days as aforesaid, and four hundred gallons per day there-
after.

It was further agreed, that the distillery of Gilbert & Stringer,
at which this distilling was to be done, should not be used for
any other purpose than that specified in and by said contract,
until the whole amount (twenty-five thousand gallons) of Beers
& Davies' was distilled, except the distillation of two thousand
gallons, then owned by Gilbert & Stringer, and also one thou-
sand gallons to be furnished by one Morrison. It was agreed,
that after these last two thousand gallons were distilled and
sold—which was to be within fifteen days from the said 1st of
December—that then all sales made by Gilbert & Stringer of
camphene, should only be that belonging to Beers & Davies; and
that there should be a charge of fifteen cents upon each gallon of
said turpentine so to be distilled, and also the expense of a horse
and wagon, and a man to drive the same, which last charge to
be equally borne by Beers & Davies and Gilbert & Stringer.
Beers & Davies were to furnish the turpentine at the market

price for turpentine, and the difference or profits—after deducting such expenses and charges as aforesaid charged—should be equally borne by the two firms.   " This agreement to be null and void should said parties of the first part sell the balance of the turpentine remaining undistilled at any time, on their payment to said parties of the second part, of fifteen cents per gallon on the amount so remaining undistilled.

And it is further agreed, between the parties hereto, that the amount of damages to be expressed or assessed, for a failure to comply with the conditions of this agreement, shall be the sum of thirty-seven hundred and fifty dollars, ($3,750,) or fifteen cents per gallon on amount of turpentine on behalf of the parties of the first part; and on behalf of the said parties of the second part, a quiet and peaceable surrender of the said distillery and works, and one thousand dollars, ($1,000,) the same to be considered as liquidated damages for the non-performance of this agreement.   The payments by said parties of the first part for turpentine distilled shall be made at the end of each week, (every Saturday,) and payments by said parties of the second part for camphene sold shall be at the same time, the end of each week, (on every Saturday,) during the continuance of this agreement; for any accident resulting to said distillery, a reasonable time is to be allowed said parties of the second part for repairing the same.   This agreement to end April 1st, 1857, if not sooner ended.   And it is further agreed, that said parties of the second part are to be responsible for all sales of camphene made by them."

The case was tried by a referee, who reported a judgment in favor of the plaintiff for a large amount of money, on the basis of fifteen cents a gallon, turpentine not delivered.   The referee also reported to the Court the evidence taken by him in the case, which was voluminous.   A judgment was entered on the report, and afterward the defendant moved to set it aside, which was done by the District Court, and a new trial granted.   The plaintiff claims as assignee of this contract, and brought his suit on the 15th of April, 1857.

It was in proof before the referee, that the distillery was burned about the last of January, 1857, and that eighteen days

were required or employed in rebuilding it and putting it in working order, and this was found to be a reasonable time.

It has been seen, that the defendants were not bound to deliver the turpentine all at once, or even any given quantity a day. The other parties bound themselves to distill such quantity as might be furnished by Beers & Davies, subject to certain limitations. It has also been seen, that the contract allows to Gilbert & Stringer a reasonable time for repairing the distillery, if any accident happened to it. This condition happened. We think, that the benefit of this cause of suspension of the business and works inured as well to Beers & Davies as to Stringer & Gilbert. That the time for the performance of the contract, became extended for the period of eighteen days, the time required for the repairs. Up to that time—which would be on the 18th of April, 1857—Gilbert & Stringer would have been bound to receive and distill turpentine furnished to them. But before this time they seem to have assigned this contract, and if by this agreement they did not put it out of their power to comply with the contract, certainly the assignee was not invested with the right to sue before the expiration of the period limited in the contract. The defendants certainly would not be in default on the whole contract until the time elapsed for a compliance, as it could not be known how much turpentine would be delivered on the last days, or latter portion of the time mentioned in the contract. The suit was commenced before the expiration of this period. It is true, the contract provides that the agreement is to end on the 1st of April, if not sooner terminated; but this must be taken in connection with the other stipulations; for it would be absurd to hold, that if, by repeated accidents, the distillery should be out of working order, the defendants would be liable for not delivering turpentine which could not be used, or that the contract would be fulfilled or concluded, by the first of April, irrespective of these obstacles to its execution.

The point as to the statement is not well taken.

Judgment affirmed.