# HARRINGTON *v.* WATSON.

| 11 | 143 |
| 21 | 32 |
| 21 | 209 |
| 3* | 173 |
| 27* | 166 |
| 27*1052 |
| 11 | 143 |
| 39 | 362 |
| 11 | 143 |
| 47 | 160 |
| 47 | 167 |

DESTRUCTION OF PREMISES, WHEN TERMINATES OBLIGATION TO PAY RENT.— The doctrine of the common law is, that when lands and buildings are leased, and the tenant expressly covenants, without limitation or reservation, to pay rent for a term of years, he is not released from that obligation by the destruction of the building leased by accidental fire.

EXCEPTION TO THIS RULE EXISTS WHEN THE LEASE IS OF AN UPPER STORY or basement, or an apartment in a building, founded upon the idea that it is not the intention of the lease to grant any interest in the land beyond that connected with the enjoyment of the room demised, and when this is destroyed by accidental fire, there is nothing upon which the demise can operate, and the lease terminates with the destruction of the thing rented.

LEASES MUST BE CONSTRUED ACCORDING TO THE INTENTION of the parties, and with reference to the subject matter.

ACTION OF FORCIBLE DETAINER CAN NOT BE MAINTAINED when the facts and circumstances indicate no purpose nor determination upon the part of the defendant to resist the entry of the plaintiff by force.

APPEAL from Multnomah County.

*E. D. Shattuck and R. L. McKee*, for appellant.

*John M. Gearin*, for respondent.

By the Court, LORD, J.:

This was an action of forcible entry and detainer. It is brought to this court by an appeal from the judgment of the circuit court for Multnomah county, affirming the judgment of the justice's court for Morrison precinct, and giving judgment in favor of plaintiff for restitution of the premises described in the complaint, and for the sum of one thousand eight hundred and twenty dollars for the use and occupation of the same. Briefly, the cause of action arose out of this state of facts: The plaintiff is the owner of lot 8 in block 15 of the city of Portland, upon which had been erected a wooden building containing several rooms. On

the second day of December, 1878, the plaintiff leased to the defendant one of the rooms in said building for a term of five years for a certain monthly rent, payable in advance, and the defendant, by virtue thereof, entered into possession of said room and remained in the quiet and peaceable possession of the same until the twenty-fifth day of September, 1882, when the building, including said room, was totally destroyed by fire. On the twenty-fifth day of September, 1882, without the knowledge of plaintiff, the defendant moved upon said premises another wooden building, and occupied the same, and, on the first day of November, 1882, the plaintiff served a written notice upon the defendant to quit, and also demanded possession of the premises, which the defendant refused to deliver up or any portion thereof. Upon this state of facts, the defendant brought an action of forcible entry and detainer, alleging, among other things, "that on the twenty-eighth day of September, 1882, the defendant unlawfully and by force took possession of said property, and ever since said time has maintained, and does now maintain, possession of said premises unlawfully and by force," all of which the defendant, by his answer, denied, and set up the lease as a defense to his action.

Upon issue being joined, the cause was tried, by agreement of the parties, without the intervention of a jury, with the results as above stated. The findings of fact by the court will be referred to hereafter, so far as the same may be necessary to the decision of this case. The first question presented for our consideration is, did the total destruction of the building in which was situated the room occupied by the defendant, terminate the lease? The particular language of the lease, out of which this contention arises, is as follows: "That in consideration of the covenants herein contained on the part of the said Thomas Watson, to be kept

and performed, I, the said D. F. Harrington, do hereby lease, demise, and let unto the said Thomas Watson, the following property, situated in the city of Portland, county of Multnomah, state of Oregon, to-wit: The room on the corner of North First and F streets, having sixteen feet frontage on North First street, and fifty feet deep on F street, and located in the one-story building now erecting on lot 8 in block No. 15, on the corner of said North First and F streets, the same being in Couch's addition," etc. Whatever hardships it may involve, the doctrine of the common law undoubtedly is, that whenever lands and buildings are leased, and the tenant expressly agrees and covenants, without limitation, or qualification, to pay rent for a certain term of years, he is not released from that obligation by the destruction of the buildings leased, by accidental fire.

In *Hallet* v. *Wylie*, 3 Johns., 44, the court say: "We think it may be safely said, there is not a case in the books, where the destruction of the demised premises has been held to excuse the tenant from the payment of the rent, on an express covenant; but in every case where a defense on that ground has been attempted, it has failed." And later, in *Gates* v. *Green*, 4 Paige Ch., 355, Chancellor Woolworth said that "it must now be considered settled, both in England and in this state, that a lessee of premises which are burned has no relief against an express covenant to pay the rent, either at law or in equity, unless he has protected himself by a stipulation in the lease, or the landlord has covenanted to rebuild." (3 Kent's Com., 446; Wood's Landlord and Tenant, p. 814, note.) The authorities, however, indicate that there is an exception to this rule; that the destruction of the building does not discharge the liability of the tenant for rent, where the lease is of an upper story or basement or apartment in a building, because in such case, the

courts say, it is not the intention of the lease to grant 'any interest in the land further than is necessary for the enjoyment of the rooms so demised, and when these are destroyed, there is nothing upon which the demise can operate, and the lease terminates with the estate. (*McMillen* v. *Solomon*, 42 Ala., 356; *Austin* v. *Field*, 7 Abb. Pr., 34; *Graves* v. *Berdan*, 26 N. Y., 498; 29 Barb., 100; *Kerr* v. *Merchant's Exchange*, 3 Edw. Ch., 316; *Winters* v. *Cornish*, 5 Ohio, 477; *Womack* v. *McQuarry*, 28 Ind., 103; *Stockwell* v. *Hunter*, 11 Met. 448; *Ainsworth* v. *Ritt*, 38 Cal., 89; *Shawmut National Bank* v. *Boston*, 118 Mass., 128; *Whitaker* v. *Hawley, et al.*, 25 Kan., 674.)

Our first inquiry, then, must be to ascertain whether it was the intention of the parties, to be gathered from the whole lease, to grant to the lessee any estate in the land. Now what is the principal thing granted, demised, and for the enjoyment of which the defendant has covenanted to pay rent? The language of the lease is, "the room on the corner of North First street, etc., and located in the one story building now erecting on lot 8 in block 15," etc. It is clear that it is not the whole building, or house, but only a certain room located in that building, which is the principal thing demised or rented, and for which a description was necessary to identify it and distinguish it from other rooms in the building not intended to be demised to the defendant. A lease of lot 8 in block 15 would carry the land and buildings upon it, and so, too, would a lease of the house, or building, carry, at least, the adjacent soil, for "by a grant of a house, the ground whereon it doth stand doth pass." (Sheppard's Touchstone, 90.) But the lease is not of the house or building, but of a particular room in the building, viz., "the room on the corner," etc.

There is a distinction between a house and the rooms

within it.   In *Kerr* v. *Merchants' Exchange, supra*, the
vice-chancellor said:   "So in the present case, the leases are
not to be considered leases of land, but of apartments in the
building, distinct from the land on which it was erected.
Leases must be construed according to the intention of the
parties, and with reference to the subject matter, which, in
this instance, were rooms or apartments in the building
designated by certain numbers.    I think it follows, that,
with the destruction of the premises which were demised,
namely, the apartments in the building, the lease itself, and
the rights and interests under it, terminated."   So, too, in
*Stockwell* v. *Hunter, supra*, the court say:   "The proper
construction of such a lease as the present, as seems to us,
is, that the lessee's right of occupation of the land is an in-
terest, for the time being, defeasible by the destruction of
the building by fire."

So, also, in *McMillan* v. *Solomon, supra*, it was decided
that, by the lease of apartments in a building, in a town, for
the purposes of trade, the lessee takes only such interest in
the subjacent land as is dependent upon the enjoyment of
the apartment needed and necessary thereto; and if they are
totally destroyed by fire, this interest ceases.    By the lease
in question, the defendant took no interest in the subjacent
soil, or lot 8, beyond that connected with the enjoyment of
the particular room demised or rented.    It, "the room on
the corner," etc., was the thing leased; and when the prin-
cipal thing leased was destroyed, the lessee's interest therein
necessarily terminated.

The fire dissolved the relation of landlord and tenant, for
there was nothing left to hold in tenancy.    The thing rented
was gone, destroyed by fire, and, as a consequence, the lease
terminated.    A few days after the destruction of the build-
ing by fire, the defendant, under the assumption that his

lease included a demise of the land, and had not terminated, moved another building on the same and on the place occupied by the building destroyed by fire. Upon this state of facts, the plaintiff served upon the defendant a written notice to quit, and demand of the possession of the premises, which the defendant refused to surrender; whereupon the plaintiff brought an action of forcible entry and detainer. Can it be maintained? It was found as a fact by the court below that the entry of the defendant, in moving the building on the lot, was made "in the daytime and in a peaceable and quiet manner;" and whatever views we may entertain upon such an entry, the argument treated us as precluded from the examination of this subject, and upon that hypothesis we shall consider it. The argument was that the refusal to surrender the premises on the written notice, was the holding of the possession by force, or a forcible detainer. Now this is not the case of a defendant unlawfully holding over after the expiration of his lease, for, in that case, he only continues to hold the possession of the identical premises, or some part thereof, originally leased, but it is the case of a defendant entering—peaceably, we must take it—upon the land of the plaintiff, under what he believed to be a claim of right, and refusing to deliver the possession upon a written notice and demand of the premises.

To maintain his action, then, the plaintiff must bring his case within the principle, "where the possession shall be held by force," as declared in our statute, and *Taylor* v. *Scott*, 10 Or., 485, is decisive that he cannot recover under this provision unless he proves that the defendant forcibly detains the premises from him. It needs no argument to prove that the refusal of the defendant, under the facts of this case, indicate no purpose or determination, on his part, to resist the entry of the plaintiff by force. Without some such

purpose, *Taylor* v. *Scott, supra,* is decisive that this action cannot be maintained. We do not mean to assert that plaintiff was bound to regain possession of the premises by force, for that would lead to a breach of the peace, which it was the object of the statute to prevent and punish; but that there must be something, at least, in the facts or circumstances, to indicate that the possession will "be held by force." In *Steinlein* v. *Halstead,* 42 Wis., 424, which was an action of forcible entry and detainer, it appeared that the defendant entered upon the premises by tearing down the fence and moving a building on to the lot.

In regard to the detainer, the testimony of the plaintiff was as follows: "I went into the building and found the defendant to be the owner of the building, and occupier. I told him he had taken unlawful possession here, and I wanted him to remove without delay. He said he would not remove, unless he was forced to do so by law; that nobody could get him away, unless he was forced to go by law; he had two or three men working in the shop." And the court say, "that this language fairly imported that the defendant would resist, by force, all attempts, except through legal process, to remove him from the possession." Now here the language of the defendant and the circumstances of the case manifest a determined purpose to retain the possession and to resist, with force, any attempt of the plaintiff to regain the possession otherwise than by legal process. There is certainly nothing in the facts of the case at bar which indicate any purpose or determination of the defendant to resist the entry of the plaintiff by force. We hold, therefore, upon the facts of this record, that the action cannot be maintained. The judgment of the court below, including the judgment for one thousand eight hundred and twenty dollars, for use and occupation, is reversed and the action dismissed.