### LEVY et al. v. EQUITABLE LIFE ASSUR. SOCIETY.

(Circuit Court of Appeals, Sixth Circuit. May 5, 1908.)

No. 1,749.

LANDLORD AND TENANT—CONSTRUCTION OF LEASE—PROVISION FOR TERMINATION IN CASE OF INJURY BY FIRE.

A lease for a room in a six-story building provided that, if the "building or premises wherein said demised premises are contained" should be destroyed by fire or so badly injured that they could not be repaired within sixty days, the lease should terminate; but if said premises, "having been injured as aforesaid," should be repairable within 60 days, the lessor should repair with all reasonable speed, and the rent should cease during the time of making the repairs, and that, if so slightly injured as not to be rendered unfit for occupancy, they should be repaired and the rent should not cease. Held, that such provisions applied to the entire building, and, that, on an injury to the building by fire which could not be repaired within 60 days, the lessor was entitled to terminate the lease, although the demised portion was only slightly injured, and not rendered unfit for occupancy.

In Error to the Circuit Court of the United States for the Western District of Tennessee.

L. Lehman, for plaintiff in error.

D. Goldsmith and H. Craft, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This is a suit which grew out of the partial destruction by fire of what was known as the Equitable Building, in Memphis. Beginning August 1, 1903, the plaintiffs leased a storeroom in one corner of the building, on the ground floor, for use as a saloon and café; first, for three years, and after that for five years more. On February 21, 1906, the building was partially destroyed by

fire. It was a large office building, estimated to be worth $79,000, and the adjusters appraised the damage at $43,000. The building had six stories, and the principal damage was to the upper stories. The storeroom occupied by the plaintiffs was but slightly damaged; the principal injury being from water. The plaintiffs did not vacate the storeroom occupied by them in consequence of the fire, but continued to do business, and on March 12, 1906, the agent of the defendant served notice upon them that he considered the lease canceled by reason of the damage to the building, and expected them at once to surrender possession of the premises. The plaintiffs refused to do this, and have been in possession ever since. Instead of surrendering, they brought the present suit to recover $25,000 damages for breach of the two leases under which they claim to hold possession of the saloon. A part of the damages alleged rests in contract and a part in tort. Thus the lessor was to furnish water, heat, and light, but after the fire the water, gas, and electricity were shut off, it is claimed, in violation of the contract. After the fire, a fence or barricade was constructed around the saloon, to some extent hindering entrance. A shed was built over the sidewalk, and a chute, or two chutes, for brick and debris, were constructed from the second story to the street in front of the entrance to the saloon. All these acts were charged by the plaintiffs to have been wanton and unnecessarily harmful to their business. The case was tried before a jury, and there was a verdict for the defendant. The attempt is to reverse this.

The allegations of the declaration concerning the contents and provisions of the two lease contracts made and entered into between the Equitable Society and the plaintiffs were admitted by the latter in its plea to be correct. The charge of the court was based upon the statement of the declaration referred to, which is as follows:

"Both of said leases provide that if during the term thereof the building or premises wherein said demised premises are contained shall be destroyed by fire, or the elements, or be so badly injured that they cannot be repaired within 60 days from the happening of such injury, then said lessees shall immediately surrender said premises and all interest therein to the defendant. And both of said leases further provide that in case of destruction or partial destruction of said building, as aforesaid, the defendant, as lessor, may re-enter and repossess said premises; but if said premises, having been injured, as aforesaid, shall be repairable within 60 days from the happening of such injury, then the rent shall not run or accrue after such injury, or while the process of repairing in going on, and defendant, as lessor, shall repair the premises with all reasonable speed, and the rent shall re-commence immediately after such repairs shall be completed; and if said premises shall be so slightly injured by fire, or the elements, as not to be rendered unfit for occupancy, then said lessor agrees that the same shall be repaired with reasonable promptitude, and in that case the rent accrued or accruing shall not cease or terminate."

It was the contention of the plaintiffs that these leases provided that, if the demised premises should be so badly injured that they could not be repaired within 60 days after the fire, the lessees should immediately surrender the same. But, if the demised premises should be repairable within 60 days, then the rent should not accrue after the injury, or while the work of repairing was going on. The lessor should repair the premises with all reasonable speed, and rent should re-com-

mence immediately after such repairs should be completed; and, if the demised premises should be so slightly injured as not to render the same unfit for occupancy, then the same should be repaired with all reasonable promptitude, and in that case the rent accrued or accruing should not cease or terminate. In other words, the plaintiffs contended that the provisions of the lease or leases respecting the demised premises related to them alone, and not to the building as an entirety. The character of the injury done by the fire was to be determined with reference to the demised premises alone, without regard to the building in which they were contained. If the demised premises should be repairable in 60 days from the fire, or if the demised premises should be so slightly injured as not to be rendered unfit for occupancy, in either case the lessor should repair the premises with all reasonable speed. In the first case the rent should not accrue while the premises were undergoing repairs; and, in the second case, the rent should not cease or terminate.

The whole case turns upon the construction of these provisions of the leases as set forth in the declaration. The court recognized this and instructed the jury that if they believed from the testimony that the building could not have been repaired within 60 days, but that it would require more than 60 days to have repaired it and placed it substantially in the condition it was in before the fire, then their verdict should be in favor of the defendant. Asked at the close of the charge what he meant by the expression "building," the court said: "I mean the Equitable Building." And then questioned by counsel, "As a whole?" the court replied: "As a whole; from cellar to garret."

To make explicit its position with regard to the construction of the provisions of the written leases, as set out in the declaration, the court declined to charge the jury: (1) That the provisions for the termination of the leases on account of damage by fire means damage or injury repairable within 60 days to the part of the Equitable Building embraced in said leases without reference to the time required for repairing other parts of the building "(2) If you find that by the fire which occurred in said building on February 21, 1906, the part thereof demised by said lease was not injured, or was injured and the damage was repairable within 60 days from the time of the fire, then such damage did not operate to give the defendant the right to end both or either of said leases." (3) And the foregoing second instruction is applicable, even though it might have required more than 60 days from the time of the fire to have repaired other parts of the building than those covered by the lease, unless it was necessary in the repairing of such other parts to include the said leased premises in the work of repair that would take more than 60 days from the time of the fire to accomplish.

We think the court was quite right in taking the view it did of the provisions of the leases as set out in the declaration. It seems clear to us that the opening provision related to the destruction or damage by fire of the entire building described as "the building or premises wherein said demised premises are contained." It is provided that if these shall be destroyed by fire, or the elements, or be so badly injured that they cannot be repaired within sixty days from the happening of

said injury, then said lessees shall immediately surrender said premises and all interest therein to the defendant. This reading seems clear beyond controversy. An attempt is made to throw doubt upon its meaning by commenting on the succeeding provisions. But we think a careful reading of them makes their meaning plain. The declaration provides: "And both of said leases further provide that in case of destruction or partial destruction of said building, as aforesaid [observe that the reference is to the "building," meaning the entire premises "wherein said demised premises are contained"]." The defendant as lessor, may re-enter and repossess said premises [meaning evidently the demised premises]; "but if said premises, having been injured, as aforesaid [clearly referring to the entire building, the destruction or injury of which is the subject of the first provision], shall be repairable within sixty days from the happening of such injury, then the rent shall not run or accrue after such injury, or while the process of repairing is going on, and the defendant, as lessor, shall repair the premises with all reasonable speed," etc. There is room for argument that each lease should stand by itself, and that each part of the building should be considered as a unit in determining the effect of the injury caused by a fire on the lease which covers it. As a matter of policy there are arguments on both sides. It may be very impolitic to allow a lease to run simply because the room covered by it is substantially uninjured, although more than half of the building has been destroyed and will have to be rebuilt. But, after all, the question is not what the lease ought to be, but what it is, and that must be determined by a construction of the provisions of the leases as set forth in the declaration. For the reasons we have given, we think the court below was correct in the construction it gave in its charge to the jury.

Judgment affirmed.