# JACOB SPEAR, ABRAHAM SPEAR *vs.* CHARLES E. BAKER, Trading as Baker Bros., & Company.

*Landlord and tenant: property destroyed by fire; liability for rent; Code, Art. 53, sec. 27; agreement of parties thereto; rebuilding the property.*

Section 27 of Article 53 of the Code of Public General Laws changes the common law rule as to the liability of a tenant for rent, in case the improvements become untenantable by reason of fire or other unavoidable accident, and provides that the tenancy should in such a case be terminated; but nothing in the statute prohibits the parties from making their own contracts in relation thereto.                                    p. 573

By a lease it was agreed that in case the premises should be so damaged by fire as to be rendered untenantable, the rent should cease until the premises should be rebuilt or fully repaired; by another provision the lessee might terminate the lease by giving notice in writing within ten days of said partial destruction; should the premises be totally destroyed, either party might terminate the lease by giving notice in writing within ten days of the occurrence; the lessees to pay the proportionate part of rent up to the date of such occurrence. The premises were partially destroyed by fire, and upon being rebuilt, the lessee, without having given any notice that he would terminate the lease, refused to pay rent for the new building, and upon his refusal suit was brought therefor. *Held,* that Article 53, section 27 of the Code could not be pleaded in defence, and a demurrer to the plea was sustained on the ground that since the parties had contracted with reference to the matter the statute was no bar.                p. 574

Before the lessor had the right to claim rent from the lessee after the partial destruction of the property and the cessation of the lease according to the terms of the agreement therein contained, it was necessary for the lessor to rebuild and fully repair the property until it was restored to its former condition; and where the original warehouse was a six-

story structure, provided with elevators, a new structure of only five stories and without elevators is not in compliance with the landlord's obligation and does not entitle him to recover rent.                                                   p. 578

*Decided February 29th, 1912.*

Appeal from the Court of Common Pleas of Baltimore City (BOND, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*Myer Rosenbush* (with whom was *Thomas G. Hayes* on the brief), for the appellants.

*John B. Deming* (with a brief by *Whitelock. Deming & Kemp*), for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from a judgment in favor of the appellee, on a verdict rendered for him in accordance with a prayer that the plaintiffs had offered no evidence legally sufficient under the pleadings to entitle them to recover and that the verdict must be for the defendant. The case was tried before the Court without the intervention of a jury and that prayer was granted at the conclusion of the plaintiff's evidence. There are nineteen bills of exception in the record—the first eighteen presenting rulings on the admissibility of evidence, and the nineteenth containing an exception to the granting of the above mentioned prayer. There were also some demurrers to the pleadings passed on by the Court, but under the view we take of the case it will be unnecessary to discuss many of the rulings of the lower Court.

On January 16th, 1906, Spear Brothers leased to Baker Brothers and Company a warehouse in Baltimore, known as

102 South Sharp Street, for five years from the 15th of February, 1906, at the annual rental of $3,500.00, payable in monthly instalments. Subsequently the firm of Spear Brothers was dissolved and the appellants became the owners of the property, and Charles J. Baker, Jr., having departed this life the appellee, Charles E. Baker, continued to occupy the premises, trading as Baker Brothers and Company. The lease contained amongst others the following provisions: "And it is further understood and agreed, that in case the said warehouse should be damaged by fire, or the elements, or be so injured as to be rendered untenantable, that the rent during the time the said warehouse shall so remain unfit-for occupancy, shall cease, but to begin again so soon as the said warehouse is rebuilt or fully repaired; with the privilege, however, to the said parties of the second part to terminate this lease, by giving notice in writing within ten days of said partial destruction. Should the said warehouse be totally destroyed, either of the parties of the first or second parts may terminate this lease, upon giving notice thereof in writing, within ten days after the occurrence of said total destruction, the aforesaid parties of the second part paying proportional rent up to the day of said occurrence." .

On the 3rd of December, 1909, a fire occurred which partially destroyed the warehouse, and the *narr.* alleges that the defendant did not give the plaintiff a written notice of his intention to exercise his privilege to terminate the lease within ten days after the premises were partially destroyed by the fire, as provided in the lease. It is further alleged that the plaintiffs notified the defendant on the 25th of May, 1910, that the warehouse was rebuilt, fully repaired and ready for occupancy, and that the rent would begin on the 26th day of May, 1910. This suit was brought to recover the rent claimed to be due from that time to the 15th of July, 1910.

1. The defendant filed four pleas, the first and second of which were afterwards withdrawn, and a demurrer to the

third was sustained and one to the fourth overruled. The third relied on sec. 27 of Art. 53 of the Code, which provides that in leases made after June 1st, 1904, "whenever the improvements on property rented for a term of not more than seven years shall become untenantable by reason of fire or other unavoidable accident, the tenancy shall be thereby terminated, and all liability for rent thereunder shall cease upon payment proportionately to the day of fire or unavoidable accident." As the demurrer to the third plea was sustained, it may not be necessary for us to discuss at length that ruling of the lower Court, as we are of opinion that there can be no recovery on other grounds, but as we have no doubt about the correctness of the ruling we will state our reasons for that conclusion. The statute referred to was intended to change the common law rule as to the liability of a tenant for rent, in case the improvements on the property became untenantable by reason of fire or other unavoidable accident, and it also provides that the tenancy should be terminated. As this Court had held in *Buschman* v. *Wilson,* 29 Md. 553, that where it is stipulated in a lease that the rent shall cease if the demised premises are burned down, the happening of the contingency determines the lease, it may not have been necessary to have so provided in the statute, but it was eminently proper to do so. But we find nothing in the statute or in the policy of the law which would prohibit lessors and lessees from making their own contracts on those subjects. If a lease does not provide for such contingencies, then the statute controls, in cases to which it is applicable, just as the common law did when the parties did not provide for them, but no reason occurs to us why the parties should be prohibited from contracting in reference to them. The cases of *Stewart* v. *Gorter,* 70 Md. 242, and *Swan* v. *Kemp,* 97 Md. 686, cited by the appellee, presented a very different question. The statute involved in those cases was passed because it was known that the system of irredeemable ground-rents which had prevailed in Balti-

more had been very injurious to the prosperity of the city and
a sound public policy demanded that the right to redeem
be given to holders of leasehold interests under such leases
as the statute included. It was not passed for the *exclusive*
benefit of lessees, but for the public good, and it would have
defeated its manifest object if the parties to leases had
been permitted to contract contrary to its terms. There
are many statutes in force which contracting parties will
not be permitted to waive, or in any way set aside, because
the public welfare is involved in them, but there can be no
reason why lessors and lessees should not be permitted to
provide by contract for such matters as those now under
consideration. As these parties did so contract, the plea
setting up the statute was not an answer to the suit, and
the demurrer to it was properly sustained.

2. The fourth plea presents as a defense the claim that
the building which had been erected since the fire, upon the
lot included in the lease, differs materially from that orig-
inally on the lot. It alleges that it differed in the follow-
ing particulars, viz: "the present building has but five
floors and a basement, whereas the former building had six
floors and a basement; the present building has no passenger
elevator, whereas the former building had a passenger ele-
vator conveniently located for access to the upper floors."
and that the floor space had been reduced by reason of
thicker partition walls being used. The last named ground
was abandoned, but the other two are relied on. It is also
alleged in the plea that the defendant had never been con-
sulted about or agreed to the said changes that he had
not agreed to rent from the plaintiffs a building of the type
now on said lot.

As it presents the important question in the case, we
will now consider the action of the Court in reference to the
demurrer to that plea, although in doing so our discussion
may include what would more properly be confined to a con-
sideration of the prayer which was granted. Assuming the
facts alleged in the plea to be true, as we must in passing

on the demurrer, the question is whether this suit can be
maintained notwithstanding the provisions in the lease above
quoted. We must bear in mind that the action is based on
the lease, and the plaintiffs undertake to recover rent which
is alleged to be due *under the terms of the lease.* It matters
not that the defendant claimed that the fire terminated the
lease, by reason of the provision of the statute above referred
to, as the plaintiffs not only did not concur in that view,
but they distinctly allege in the *narr.* that the defendant
did not give them the ten days' notice in writing "as in
said lease provided, and by reason thereof the said defendant
continued to be the tenant of said plaintiffs under the terms
of said lease." If the defendant denied that he was any
longer bound by the lease, and informed the plaintiffs that
he would not occupy the premises when rebuilt, they had the
right to elect either to rebuild and hold the defendant for
the rent in accordance with the terms of the lease, or to
treat his refusal to recognize himself as their tenant as final,
and either not rebuild at all or to the extent they saw
proper. But if they adopted the latter course, clearly they
could not rely on the lease as a subsisting contract, and
recover the rent agreed to be paid by the lessees. It is
useless, however, to determine what their rights would have
been if they had pursued that course, as they have sued
the defendant on the distinct ground that the lease was still
in force, and that he continued to be their tenant—alleging
that they had fully rebuilt and repaired the warehouse, and
claiming the rent only from the time it was alleged to be so
rebuilt and repaired. In other words, they declined to con-
sent to a recision of the contract or to accept the tenant's
construction of the statute referred to, and elected to hold
him to the terms of the lease, and to treat it as a subsisting,
binding contract. That being so, they are in this suit
likewise bound by it, and they expressly recognize in the
*narr.* that they were so bound.

But regardless of the plaintiffs' construction of the lease,
as shown by the narr., there would seem to be no serious dif-

ficulty about the meaning of it. This case differs from
*Lincoln Trust Co.* v. *Nathan,* 175 Mo. 32, and *Fowler* v.
*Payne,* 49 Miss. 78, and from what is said in *Underhill on
Landlord and Tenant,* page 1350, relied on by the appellee,
in that there is no *express* covenant on the part of the appellants that they would rebuild or fully repair, in case of damage by fire, etc., but it can not be doubted that it was understood by the parties to the lease that the lessors, and not the
lessees, were to rebuild or fully repair. It is agreed in the
lease that the lessors would have the house and fixtures put
in good order and repair and that they would during the
term of the lease keep in good order and repair the roof,
downspouts and exterior of the property leased, and the
agreement of the lessees, to keep the property in as good
order and repair as it then was, was qualified by "reasonable
wear and tear and damage by fire or the elements alone
excepted." The latter also agreed to surrender the premises
at the expiration of their term "in as good and substantial a
condition in all respects as it now is, reasonable wear and·
tear and damage by fire or the elements alone excepted."

Then when we turn to the provisions first quoted, in reference to the warehouse being damaged by fire, etc., we find
it distinctly agreed "that the rent during the time the said
warehouse shall so remain unfit for occupancy *shall cease,*
but to begin again so soon as the said warehouse is rebuilt
or fully repaired," and, as we have seen, it is clear that the
lessors, and not the lessees, were to rebuild and fully repair.
It is likewise perfectly clear that when the rent ceased by
reason of the fire, as the narr. admits, it did not begin again
until the warehouse was rebuilt or fully repaired. Of course
a substantial performance by the appellants of what they
were required to do was all that was necessary but *that* was
essential to their right to recover rent, which had been suspended by the fire by the express agreement of the parties,
until that was done. The obligation of the tenant to resume
the payment of rent was dependent upon the performance of
the undertaking on the part of the landlords to rebuild or
fully repair. Indeed it is alleged in the narr. that "no rent

accrued from the said defendant to said plaintiffs, under the terms of said lease, until said premises were restored to their former condition."

Being then of the opinion that no rent could be recovered until the warehouse was rebuilt and fully repaired, and that a substantial compliance with that undertaking by the plaintiffs must be shown, we will now determine whether this plea alleged such facts as show such a failure on the part of the plaintiffs to comply with the terms of the lease as precludes a recovery of the rent sued for.

3. The plea alleges, and the record shows it to be true, that the building is now only five stories high with a basement, while the one leased was six stories high with a basement. If a five-story building was a substantial compliance with the obligation resting on the landlords, why would not one four stories high have been such a compliance? The tenants had the right under the terms of the lease to sub-let one or more floors, subject only to obtaining the consent in writing of the landlords as to the nature of the business to be conducted in them. It is shown by the evidence that there were four buildings adjoining each other and two of them are six stories high, while this one and No. 104 S. Sharp street, owned by the plaintiffs, are now only five stories. It is difficult to understand how it can be said that a building having only five floors is substantially the same as one having six floors. The appellants have undertaken to show that as the two upper stories of Nos. 102 and 104 S. Sharp street have been so arranged that they are communicating, it would practically be a six-story building if the fifth story of No. 104 is used with that of No. 102, but in the first place no part of No. 104 is included in the lease, and it is not pretended that the appellants even offered the use of that story to the appellee before this suit was brought. Certain it is that the appellee never agreed to accept it, and it would necessarily have required a change in the lease if he had. So without further discussion of that subject, it is manifest that the appellee could not be required to accept

the space in the adjoining building, in place of the sixth story.

In addition to that, the evidence shows that the passenger elevator was not only not replaced, but the elevator well is actually floored over. It may be that it could at small expense and in a short time, be so arranged that it could be used, but it had not been when this suit was brought for rent which it is claimed had already accrued. A passenger elevator may be very desirable, if not a necessity, in a building five or six stories high, but whether it is or not is not for the appellants to determine, if they propose to hold the appellee responsible for rent under this lease. But regardless of the condition of the elevator, we are of the opinion that building a five-story warehouse instead of one six stories high was not a substantial compliance with the requirements of the lease, and the failure to rebuild it substantially as it was before the fire defeats a recovery for the rent. If that were not so, the provision in the lease for the protection of the lessees in case of fire, etc., would be useless.

Having reached that conclusion, it is unnecessary to prolong this opinion by discussing the other rulings on the pleadings, or those as to the admissibility of evidence, as any change in them would not enable the appellants to remove, or overcome the barrier to their recovery presented by the facts set out in the fourth plea, which are shown by the evidence to be true in respect to the height of the building and the condition of the elevator. We will only add that the prayer referred to above was properly granted under the pleadings and evidence, and it follows from what we have said that the judgment must be affirmed.

*Judgment affirmed, the appellants to pay the costs.*