JAY EDELMAN

v.

ELVIRA HENDERSON

Civil No. 138-1967

District Court of the Virgin Islands

Div. of St. Croix

Christiansted Jurisdiction

December 30, 1968

*See, also, 294 F.Supp. 323*

JAMES, HODGE & TONKIN (RONALD H. TONKIN), *for plaintiffs*

DUDLEY, BROWN & BRYANT (BRITAIN BRYANT), *for defendant*

MARIS, *Circuit Judge*

OPINION
INCLUDING FINDINGS OF FACT AND CONCLUSIONS
OF LAW

This is a suit by the plaintiff, Jay Edelman, against the defendant, Elvira Henderson, seeking a declaratory judgment and injunctive relief. From the pleadings and the evidence, I make the following

*Findings of Fact*

1. Prior to May 25, 1961 the plaintiff had operated a business under the name Alexander Hamilton Supply and Hardware Store in premises owned by the defendant, located at 56-57 King Street in Christiansted, St. Croix.

2. On May 25, 1961 the plaintiff and the defendant executed a lease for a portion of the premises owned by the defendant, the provisions of which lease, pertinent to this suit, are as follows:

"1. *Premises demised:* Landlord for and in consideration of the rents to be paid and the covenants and agreements hereinafter contained to be performed by Tenant, hereby leases to Tenant and Tenant hereby hires from Landlord, subject to the terms hereof, the property of Landlord, the same being the ground floor and

basement (cellar) of the premises known and described as No. 56-57 King Street including so much of the lot as extends from the southern boundary line thereof to the North (toward the sea) for a distance of approximately 195 feet from the beginning line of the property on King Street, running to the fence dividing the premises herein demised from that demised to KING CHRISTIAN ENTERPRISES, INC. The demised premises thus formed would be a rectangle approximately 70 feet wide facing on the street by 195 feet in length excluding nevertheless the entire building, the second storey of which was formerly occupied by Mr. David Melville and on the lot on which it stands. The use of the yard by Tenant is subject to the use by the other tenants of the premises as a means of ingress and egress to and from the portions of the property rented to said tenants, and not hereby demised. The driveway approximately 11 feet 6 inches wide is not included in the demised premises and must at all times be kept open and free to traffic, the full length of the demised premises, but tenant is hereby granted an easement of use as a means of ingress and egress to the said passage way leading from King Street which said easement shall run concurrently with this lease. Also excepted from the demised premises are the following:

"(a) The garbage disposal which enclosure Landlord has erected of concrete blocks. It is agreed however, that in the event a different area is to be designated for garbage disposal, Tenant will be consulted as to its location and in that event, the present garbage disposal area will become a part of the demised premises.

"(b) The well which is within the rectangle hereinabove outlined together with the right reserved to Landlord to lay down and maintain pipelines connecting said well with the various portions of the premises. Tenant shall be entitled to share in the use of said well.

"(c) Reservation of use to the gallery leading to toilets and the portion over the cistern. Tenant may not enclose the portion of said gallery over the cistern nor shall he render said gallery inaccessible to the occupants and guests of the 'Hamilton House' area.

"Landlord agrees to use her best efforts to see that any Tenants of the 'Melville Building' do not park their cars in the yard, that the garbage area is maintained by all users in a clean and sanitary manner, and that the gallery referred to above is not littered with containers for beer, sodas or other beverages.

"2. *Terms and Extensions:* Tenant shall have and hold the said premises for a term of ten (10) years commencing at noon on the 1st day of June, 1961, and ending at noon on the 1st day of June, 1971. If Tenant shall keep and observe all the terms and conditions hereof, he shall upon notice in writing given to Landlord not less than six (6) months before the expiration of the term herein, be granted the right to renew this lease for the additional term of five (5) years.

"3. *Rent:* The rent to be paid for the premises shall be Two Hundred ($200.00) Dollars per month for the term herein demised. In the event that Tenant shall properly exercise his option for the additional term of five (5) years the rent for the extended term shall be Two Hundred Twenty Five ($225.00) Dollars per month. All rents herein provided for shall be paid in advance on the first day of each month, and receipt of the first month's rent is hereby acknowledged by Landlord.

"4. *Use:* Tenant may use and occupy the said premises in the conduct of the business now operated by him under the name and style of 'Alexander Hamilton Supply and Hardware Store'. Tenant may also use the premises for any business purpose to which he may adapt the same provided, however that Tenant may not operate a nightclub, restaurant, bar or place of entertainment on the premises, and provided, further, that Tenant's use of the premises shall not obstruct or hinder the use of the remaining portions of the premises by the other tenants. The use made of the premises by Tenant shall not be such as to be hazardous or in violation of any federal or local law, ordinance, rule or restriction.

. . .

"7. *Destruction and Damage to the Premises:* In the event of partial or total damage to the premises by fire, the elements or other casualty, all rent in advance shall be apportioned as of the date of such damage, and the rent thereafter accruing shall be equitably and proportionately suspended and until completion of repairs; and, in the event that the premises are not repaired or restored by Landlord to the same condition in which they were prior to such damage within a reasonable time thereafter, Tenant may terminate his lease forthwith by written notice to Landlord.

"8. *Alterations and Improvements:* Tenant shall have the right to alter or redecorate the property for his business purposes, but such redecoration shall be done at his sole expense. All alterations, additions or other improvements upon the leased premises made

by Tenant (except such as may be removable without defacing or injuring the building or rest of the premises) shall become the property of Landlord and shall remain and be surrendered with the premises as a part thereof at the end of the term, without molestation, disturbance or injury. Tenant shall at his sole expense repair and maintain the floor of the demised premises. In the event that Tenant desires to alter the demised premises in any way he shall first submit his plans for such alteration to Landlord for her approval in advance of the commencement of the work. Tenant covenants and agrees to erect suitable sheds, the same to be erected within the first months of the term, for the storage of his merchandise particularly his gas cylinders and motor vehicles on such portions of the demised premises as shall be mutually agreeable to Tenant and Landlord. Tenant agrees that such sheds as he will build shall not extend further into the yard than the existing sheds. . . ."

3. Pursuant to the provision of paragraph 8 of the lease of May 25, 1961 the plaintiff erected a concrete warehouse on the rear or north portion of the lot described in the lease.

4. The plaintiff, who had previously been in possession of a part of the premises as a tenant of the defendant continued in possession after June 1, 1961 under the lease of May 25, 1961.

5. During the year 1964 each of the present parties brought an action against the other—the present defendant suing in the Municipal Court for forceable detention (Civil No. 265-1964), and the present plaintiff suing in the District Court for an injunction, declaratory relief and damages (Civil No. 146-1964). Both suits were dismissed with prejudice on May 26, 1966, in accordance with a stipulation entered into by the parties and filed in Civil No. 146-1964 to the effect that they would enter into and execute a new lease to supersede the lease then in existence, such lease to contain, inter alia, generally the same provisions as set forth in the lease of May 25, 1961, the new lease to be for a period of 10 years commencing June 1, 1966, at a

rental of $350.00 per month with an option in the plaintiff to renew for an additional 10 years at $750.00 per month.

6. The new lease contemplated by the stipulation of the parties was never executed, drafts of a proposed lease being tendered by each party to the other but not accepted.

7. On November 15, 1966 the attorney for the defendant wrote to the plaintiff's attorney as follows:

"I have finally been able to contact my clients, Mr. & Mrs. Henderson and they have advised me that they do not intend to further pursue legal action against Mr. Edelman unless he should re-activate the case in the District Court. If Mr. Edelman does not do so Mr. & Mrs. Henderson will continue under the terms of the original lease."

8. Meanwhile and until June 6, 1967 the monthly rental of $200.00 provided for by the lease of May 25, 1961 was regularly paid by the plaintiff and accepted by the defendant.

9. On June 6, 1967 a fire completely destroyed the main building on the premises in which the plaintiff was the tenant of the ground floor and basement. No damage, however, resulted to the concrete warehouse in the rear and the plaintiff continued in possession of that building, using it as a warehouse and showroom for his business.

10. By letter from the defendant's attorney dated June 22, 1967 the plaintiff was notified that the defendant did not intend to restore or repair the premises at that time or in the foreseeable future and that she considered the lease terminated. Transmitted with the letter was a check for $167.00 to the plaintiff's order representing an apportionment as of the date of the fire of the June 1967 rent which the plaintiff had paid in advance. The letter also requested the plaintiff to remove his "effects from all the buildings on the premises including the warehouse thereon" as the defendant intended to have a contractor

board up the yard area so as to prevent the public from entering on to any portion of the premises.

11. On June 28, 1967 the plaintiff filed the present complaint praying for a judgment (a) declaring him to be the leaseholder of the demised premises until June 1, 1971, with the option to extend the lease until June 1, 1976, (b) apportioning the monthly rental for the premises which the plaintiff is required to pay the defendant, and (c) enjoining the defendant from interfering with the plaintiff's quiet enjoyment of the premises until the plaintiff's leasehold has expired on June 1, 1971, or June 1, 1976 if the option to extend should be exercised. The plaintiff also seeks an award of costs and attorney's fees.

12. The plaintiff since the fire has tendered to the defendant the sum of $200.00 each month as rental which has been refused by the defendant.

## DISCUSSION

At the outset, the defendant suggests that I should in the exercise of my discretion decline to entertain this action because of the plaintiff's alleged inequitable conduct in refusing to sign the new lease tendered by the defendant. This I cannot do because I am unable on this record to find that the plaintiff was guilty of inequitable conduct in this regard. Moreover the alleged inequitable conduct to which the defendant refers does not bear any relationship to the relief sought by the plaintiff in these proceedings.[1] If a new lease had been signed, substantially all the provisions contained in the May 25, 1961 lease were to be included in the new lease. The new terms agreed upon in the stipulation, even if they had been incorporated into a new lease, would not have affected the basic issues raised here, namely, whether the plaintiff was entitled to remain in possession of the concrete building and the yard after the fire had

---

[1] See Newell v. O. A. Newton & Son Co., D.C.Del. 1950, 95 F.Supp. 355, 359.

destroyed the main building on the premises or whether, on the contrary, the defendant was then entitled to retake possession of the entire demised premises and to eject the plaintiff wholly therefrom.

I turn, therefore, to the issues which the pleadings present. These may be summarized as follows:

(1) Was the lease of May 25, 1961 terminated by the execution and approval of the stipulation of May 1966?

(2) If not, was it terminated at the time of the fire either by the total destruction of the main building of the demised premises or by the defendant's attorney's letter of June 22, 1967?

(3) If not, was the plaintiff entitled under the lease of May 25, 1961 to remain in possession of the undamaged warehouse and the rear yard of the demised premises and conduct his business therein until the expiration of the term of the lease and, if so, at what rental?

1. *Was the lease of May 25, 1961 terminated by the stipulation of May 1966?*

The defendant argues that the lease of May 25, 1961 was terminated when the parties entered into their stipulation in May 1966 to execute a new lease, the stipulation being approved by an order of this court on May 26, 1966, and thenceforth, says the defendant, a tenancy either at will or from month to month was created, commencing June 1, 1966, until such time as a new lease should be entered into, which tenancy was terminated on June 22, 1967 by the return of $167.00 of the June 1967 rent and the notice to the plaintiff to vacate the premises. It is well settled that a lease may be cancelled or rescinded by the act and with consent of the landlord and tenant.[2] And where there is an existing lease, the term of which has not expired, the acceptance by the tenant from the landlord of a

2 McCann v. Bass, 1918, 117 Me. 548, 105 A. 130, 131; 32 Am. Jur. Landlord and Tenant § 826.

new lease for the same premises, unless it appears that the parties intended otherwise, operates as a surrender of the first lease. The release of one party to the old lease is a sufficient consideration for the release of the other party.[3]

■ In the present case, however, no new lease was accepted by the parties which could operate as a surrender of the lease of May 25, 1961. Nor is there anything in the record to show a mutual cancellation of that lease. Certainly the agreement to enter into a new lease in the future—"the parties hereto will enter into and execute a new lease"—could not operate to terminate immediately the lease of May 25, 1961, in the absence of a clear expression of intention to do so. Nor did the order of this court of May 26, 1966, approving the stipulation and dismissing Civil Action No. 146-1964, purport to cancel or terminate the existing lease. At the trial much was made of the letter of November 15, 1966 from the defendant's counsel to the plaintiff's counsel which stated that the parties would continue their relationship under the terms of the original lease. The defendant testified that she did not authorize such a letter, that she considered the lease of May 25, 1961 terminated when the parties agreed upon the terms of the stipulation, and that the plaintiff was permitted to remain on a month to month tenancy until a new lease was signed. No useful purpose would be served in discussing the authority of counsel to write the letter of November 15, 1966 on behalf of the defendant, or the impressions of the defendant as to the legal status of the lease. Suffice it to say there is nothing in the record to support the defendant's allegation that the lease of May 25, 1961 had been terminated by the action of the parties.

I conclude, therefore, that the lease of May 25, 1961 was not terminated either by the stipulation of the parties to

[3] Hallam v. Commerce Mining & Royalty Co., 10 Cir. 1931, 49 F.2d 103, 107; Peterson v. Betts, 1946, 24 Wash.2d 376, 165 P.2d 95, 106.

enter into a new lease or by the order of this court approving their stipulation.

2. *Was the lease of May 25, 1961 terminated at the time of the fire either by the total destruction of the main building of the demised premises or by the defendant's attorney's letter of June 22, 1967?*

(a) Effect of the fire.

The defendant's second, and alternative, contention is that the lease was terminated by operation of law when the fire destroyed the main building on the premises. The plaintiff, on the other hand, argues that at common law the destruction of leased premises by fire or other casualty does not terminate the lease and that in such an event the lessee continues to be obligated to pay the stipulated rent.

■ ■ In Viterbo v. Friedlander, 1887, 120 U.S. 707, 712-713, 30 L.Ed. 776, 778, the Supreme Court had occasion to distinguish the nature of a lease for years under the common law and the civil law, as follows:

". . . The common law regards such a lease as the grant of an estate for years, which the lessee takes a title in, and is bound to pay the stipulated rent for, notwithstanding any injury by flood, fire, or external violence, at least unless the injury is such a destruction of the land as to amount to an eviction; and by that law the lessor is under no implied covenant to repair, or even that the premises shall be fit for the purpose for which they are leased. . . .

"The civil law, on the other hand, regards a lease for years as a mere transfer of the use and enjoyment of the property; and holds the landlord bound, without any express covenant, to keep it in repair and otherwise fit for use and enjoyment for the purpose for which it is leased, even when the need of repair or the unfitness is caused by an inevitable accident; and if he does not do so, the tenant may have the lease annulled, or the rent abated . . . ."

■ ■ Thus, at common law, the lessee remains under obligation to pay rent notwithstanding the destruction of buildings or other improvements by fire or other casualty on leased premises during the term so long as any part

103

thereof remains in existence capable of being occupied or enjoyed by the lessee.[4] There are cases, however, in which an exception to this general rule has been recognized. In the case of a demise of an apartment, a room, or even a building, where no implication arises that by the demise any estate in land was granted, the whole estate demised is extinguished with the destruction of the building and the tenant's liability for rent thereupon ceases.[5]

Thus, in Paxson & Comfort v. Potter, 1906, 30 Pa. Super. 615, 616–617, a leading case on this subject, the court said:

". . . There is no doubt that where there is a covenant to pay rent in a lease of land with a building erected thereon, the destruction of the building by fire does not absolve the lessee from liability for the rent. This rule has its foundation in the fact that the tenant is still in possession of the soil on which the building was located and that something remains to which the lease attaches. He may use the land for some purposes and may reconstruct the building. But the rule is not applicable in the case of the demise of an apartment in a building. In such a lease the tenant does not acquire a right to the possession of the land. It is impossible that the occupants of different stories of the same building could each retain possession of the soil under his apartment in the event of the destruction of the building. In such a tenancy there is no understanding, either by landlord or tenant, that an estate in the land

---

[4] Gamble-Robinson Co. v. Buzzard, 8 Cir. 1933, 65 F.2d 950; Scharbauer v. Cobean, 1938, 42 N.M. 427, 80 P.2d 785, 118 A.L.R. 102; Jones v. Fuller-Garvey Corporation, 1963, Alaska, 386 P.2d 838, 839–840; 32 Am. Jur. Ibid. §§ 493, 494; 3 Tiffany, Real Property (3d ed.) § 905; 2 Underhill, Law of Landlord and Tenant (1909) § 788.

[5] Harrington v. Watson, 1883, 11 Or. 143, 3 P. 173; Moving Picture Co. v. Scottish Union & National Ins. Co., 1914, 244 Pa. 358, 90 A. 642, 644; Solomon v. Neiser Bros., D.C.Pa. 1950, 93 F.Supp. 310, affirmed 3 Cir. 1951, 187 F.2d 735; Pierce v. Hoffstot, 1967, 211 Pa. Super. 380, 236 A.2d 828, 830–831; 32 Am. Jur. Ibid. § 495; 2 Undershill Ibid. § 789.

Some courts have refused to invoke the hard rule of the common law to the facts of a particular case and have held that where a contract relates to a specific use of property demised, the existence of which is necessary to carry out the purpose in view, a condition is implied, as though written into the agreement, that impossibility of performance arising from the destruction of the property ends all contractual obligations relating to the thing destroyed. See Greenberg v. Sun Shipbuilding Co., 1923, 277 Pa. 312, 121 A. 63; Eggen v. Wetterborg, 1951, 193 Or. 145, 237 P.2d 970, 974; Jones v. Fuller-Garvey Corporation, 1963, Alaska, 386 P.2d 838.

upon which the building is erected is granted. By the destruction of the building the whole estate demised is extinguished. The thing demised is not a space in air but a portion of the building. When the building is destroyed, nothing remains which the tenant can enjoy or claim .... The right to rent is founded on the presumption that the tenant can enjoy the property leased during the term and where this is made impossible by the destruction of the thing which was the subject of the lease, it is reasonable that an abatement of the rent should be made. A considerable part of the premises occupied by the defendant was as completely destroyed as if swallowed by the sea ...."

In a number of jurisdictions statutes have been adopted which have the effect of partly or wholly relieving the tenant from his obligation to pay rent in case of the destruction of the buildings or any part thereof during the term.[6] The courts have tended to the view that statutes of this nature are remedial and should be liberally construed in order to furnish the remedy intended. This Territory has a statute, 28 V.I.C. § 751(a), which may be applicable in such a situation, among others.[7]

But where, as in the present case, the lease deals with the matter, it is the lease which controls.[8] And in considering the lease, if a covenant therein is capable of two constructions, any ambiguity therein must be resolved in favor of the tenant.[9] My inquiry then must be to ascertain

[6] Carley v. Liberty Hat Mfg. Co., 1911, 81 N.J.L. 502, 79 A.447; Spear v. Baker, 1912, 117 Md. 570, 84 A. 62; Barry v. Herring, 1927, 153 Md. 457, 138 A. 266, 268; Miller v. Miller, 1953, 217 Miss. 650, 64 So.2d 739, 38 A.L.R.2d 674; Standard Industries v. Alexander Smith, Inc., 1957, 214 Md. 214, 133 A.2d 460, 61 A.L.R.2d 1433; Annotation 61 A.L.R.2d 1445; 32 Am. Jur. Ibid. §§ 502 et seq.

[7] The Virgin Islands Code provides:
"§ 751. Rent; liability of person in possession; action
(a) Every person in possession of land out of which any rent is due, whether it was originally demised in fee, or for any other estate or freehold, or for any term of years, shall be liable for the amount of proportion of rent due from the land in his possession, although it is only a part of what was originally demised." 28 V.I.C. § 751(a).

[8] Levy v. Equitable Life Assur. Society, 6 Cir. 1908, 161 F. 283, 285; Standard Industries v. Alexander Smith, Inc., 1957, 214 Md. 214, 133 A.2d 460, 61 A.L.R.2d 1433; Eggen v. Wetterborg, 1951, 193 Or. 145, 237 P.2d 970, 974.

[9] Anderson v. Ferguson, 1943, 17 Wash.2d 262, 135 P.2d 302, 306.

whether it was the intention of the parties, to be gathered from the whole lease, to grant to the plaintiff any tenancy in the land, as distinguished from the buildings. The language of the lease, pertinent to this inquiry, is contained in paragraphs 1, 7 and 8, which are set out in Finding of Fact No. 2.

 A fair reading of the somewhat ambiguous and conflicting language of the lease leads me to the conclusion that it demised to the plaintiff the ground floor and basement of the main building fronting on the north side of King Street, but not the land on which the main building was erected, or the Melville building and the land on which it stood, or the areas described in subparagraphs (a), (b) and (c) of paragraph 1 of the lease. Certainly it would require clearer language than appears in this lease to support a holding that it gave to the plaintiff, the tenant of a part only of the main building, an estate in the land upon which that building stood, when it appears that other parts of the main building had been demised to other tenants. I am clear, however, that the lease did demise to the plaintiff the land comprising the remaining portion of the lot and that this included the rear yard and the land on which the plaintiff erected the warehouse contemplated by the lease. It is clear also that the plaintiff's tenancy of the yard was subject to its use by other tenants for ingress and egress and that the plaintiff was granted, in addition, an easement in the adjacent driveway for ingress and egress from and to King Street.

 ██ The defendant claims that the concrete warehouse building erected in compliance with the plaintiff's obligation under the lease did not completely conform with the requirement that the shed "shall not extend further into the yard than the existing sheds". But the lease made it mandatory that the plaintiff erect the sheds "on such portions of the demised premises as shall be mutually

agreeable" and, in the absence of evidence to the contrary, it must be assumed that the concrete building was erected where it stands with the approval of the defendant. That building, although not in being at the time of the lease, was intended by both parties to be erected on the demised land. Under these facts, it is clear that the land on which it was erected was included in the demise.

In this regard the present case is distinguishable from Harrington v. Watson, 1883, 11 Or. 143, 3 P. 173, where a tenant had leased a room in a building which was subsequently destroyed by fire. Thereafter he moved another building upon the ground upon which the destroyed building had been situated, without the knowledge or consent of the landlord, and occupied a room in the new building. Under the terms of their agreement "the room on the corner ... located in the one-story building" had been demised to the tenant. The court there concluded that it was not the intention of the parties, gathered from the whole lease, to grant the land upon which the destroyed building had been located and therefore the tenant could not replace the destroyed building; there was nothing upon which the demise could operate and the lease was held to have terminated.

The defendant in this case, in support of her argument that the lease was terminated by operation of law when the main building of the premises was destroyed, relies upon Solomon v. Neiser Bros., D.C.Pa. 1950, 93 F.Supp. 310, affirmed 3 Cir. 1951, 187 F.2d 735, and Moving Picture Co. v. Scottish Union & National Ins. Co., 1914, 244 Pa. 358, 90 A. 642. But those cases are clearly distinguishable on their facts, the courts in those cases following the general principle stated in Harrington v. Watson, supra, and Paxson & Comfort v. Potter, supra.

The present case, on the other hand, is nearer in its facts to Anderson v. Ferguson, 1943, 17 Wash.2d 262, 135

P.2d 302, where several buildings were used for shingle mill purposes. A fire destroyed the machine building and structures but did not damage a dry kiln building. The tenant was held liable for the rent, the court stating: "The lease in the present case did not cover simply a building, or parts of a building, apart from the freehold, but covered, rather, a certain definitely described parcel of real estate, together with certain buildings thereon. The entire property was not destroyed by fire, but merely one of the buildings, although that was the main building. Nevertheless, the interest in the soil and the other structures thereon remained to support the lease, and since there was neither an express nor an implied obligation on the part of the lessor to repair or rebuild, the lessee's liability for the accruing rents, under the common-law rule, continued." [135 P.2d 302, 308].

And it has been held that where a sawmill and a room in an adjoining factory were leased to the same person by the same instrument for an entire rent, and both buildings were accidentally destroyed by fire, the lessee was still liable for the rent of the sawmill although released from liability for rent of the room. Womack v. McQuarry, 1867, 28 Ind. 103.

Since under the lease of May 25, 1961 the plaintiff took no interest in the land under the main building which contained the demised ground floor and basement, it necessarily follows that upon the destruction by fire of the main building including its ground floor and basement the demised estate of the plaintiff in those portions of the building was extinguished and thereafter ceased to exist. It may be that this estate would have been revived if pursuant to paragraph 7 of the lease the defendant had elected to restore the main building with its ground floor and basement rebuilt substantially as before the fire.[10] But this she

---

[10] See Spear v. Baker, 1912, 117 Md. 570, 84 A. 62.

elected not to do, as was her right. I conclude, therefore, that the plaintiff has no interest or estate in the land on which the former main building stood or in the ruins of that building or in any structure which may hereafter be erected on the site of that building. On the other hand, the plaintiff continues after the fire to have the same estate which the lease had originally demised to him in the remaining undestroyed portion of the premises, including the warehouse and the rear yard, which now constitutes the demised premises under the lease. It follows that the lease of May 25, 1961 was not terminated by the fire on June 6, 1967, but continues in force with respect to the remaining undestroyed portion of the premises originally demised.

(b) Effect of the letter of June 22, 1967.

██ The defendant further contends that following the fire she elected to and did terminate the lease by the letter of June 22, 1967 which her counsel wrote to the plaintiff. It appears, however, by the express terms of the lease, that the power to terminate the lease upon the occasion of a fire is placed solely in the hands of the tenant, the plaintiff. Under paragraph 7, upon "partial or total damage to the premises by fire", it is for him, and him alone, to elect whether or not he will end the lease. Thus, it is provided that "in the event that the premises are not repaired or restored by Landlord to the same condition in which they were prior to such damage within a reasonable time thereafter, Tenant may terminate his lease forthwith by written notice to Landlord."[11] Here, however, the plaintiff did not elect to terminate but elected, rather, to continue in possession as tenant of the warehouse and rear yard, the undamaged portion of the demised premises. The attempted recis-

---

[11] Compare Alpern v. Mayfair Markets, 1953, 118 Cal.App.2d 541, 258 P.2d 7, 37 A.L.R.2d 1166.

sion of the lease by the defendant was, therefore, wholly without effect.

3. *Is the plaintiff entitled under the lease of May 25, 1961 to remain in possession of the undamaged warehouse and the rear yard of the demised premises and conduct his business therein until the expiration of the term of the lease and, if so, at what rental?*

(a) Is the plaintiff restricted in his use of the warehouse to the storage of merchandise?

We have seen that since the plaintiff did not elect to terminate the lease following the fire he is entitled to remain in possession of the warehouse and rear yard as tenant under the lease of May 25, 1961. Admittedly, however, he is no longer using the warehouse merely for the storage of merchandise but is now using it also as a showroom and for the conduct of his business geneally. The defendant urges that in so doing he has violated the covenants of the lease which, in her view, restrict the use of the warehouse solely to the storage of the merchandise, gas cylinders and motor vehicles which were used by the plaintiff in the supply and hardware business which he conducted in the demised portion of the main building. If that were so, it is obvious that the plaintiff could no longer make use of the warehouse since the supply and hardware business is not being, and cannot be, any longer carried on in the main building. It is true that the separate warehouse building was to be erected for the storage of "his merchandise, particularly his gas cylinders and motor vehicles". But the permitted use of the premises, under paragraph 4 of the lease, is in the broadest terms. The plaintiff may use the demised premises in the conduct of his supply and hardware business. But he "may also use the premises for any business purpose to which he may adapt the same

110

provided, however that Tenant may not operate a night-club, restaurant, bar or place of entertainment on the premises".

It thus appears that while the lease contemplated that the plaintiff would conduct his existing supply and hardware business in the demised premises, he was expressly given the right to use the premises "for any business purpose to which he may adapt the same" except a nightclub, restaurant, bar or place of entertainment. This general unrestricted right necessarily extended to the concrete warehouse building which he had erected. By the very terms of the lease, therefore, he may continue to occupy that building as tenant under the lease of May 25, 1961 and use it for any business purpose not expressly prohibited by the lease, to which he may be able to adapt it.

(b) What rental is the plaintiff obligated to pay?

At common law, as we have seen, a tenant continuing in possession after a fire was obligated to continue to pay the rent stipulated by his lease. This rule may, of course, be modified by agreement of the parties. In paragraph 7 of the lease of May 25, 1961 it is provided, inter alia, that in the event of partial damage to the premises by fire the rent thereafter accruing shall be equitably and proportionately suspended until completion of repairs. Whether this provision is applicable if the landlord declines to rebuild is not entirely clear. At the trial counsel for the plaintiff requested me to fix the amount of apportioned rent which the plaintiff, continuing in possession, was obligated to pay. However, he offered no evidence on which such an apportionment might be based. Moreover, in the plaintiff's brief filed subsequently I was requested to "order defendant to accept $200.00 per month for the rental of" the demised premises, and in his seventh proposed conclusion of law I was requested to hold that the plaintiff "shall

111

pay to defendant the sum of $200.00 per month as rental for" the premises. Since $200.00 is the full amount of the monthly rental provided for by the lease of May 25, 1961 during its original term of 10 years, it will be seen that the plaintiff has abandoned his claim for the apportionment and suspension of part of the monthly rent.

It follows that the plaintiff must pay the defendant rental at the rate of $200.00 per month so long as he occupies any part of the demised premises during the term of the lease which ends on June 1, 1971, and at the rate of $225.00 per month during the period of 5 years thereafter if the plaintiff exercises his option to extend the lease for that additional period.

For the reasons stated I reached the following

### Conclusions of Law

1. The court has jurisdiction of the parties and of the cause of action.

2. The stipulation which the parties entered into in May 1966 for the dismissal of pending litigation and the execution of a new lease did not supersede, terminate, or cancel the lease of May 25, 1961.

3. The destruction of the main building on the demised premises by fire on June 6, 1967 operated to terminate the estate of the plaintiff in the ground floor and basement of the main building of which he had previously had possession under the lease but did not operate to terminate or cancel the lease of May 25, 1961 with respect to the remainder of the demised premises.

4. The defendant was not obligated to rebuild the destroyed main building for the benefit of the plaintiff.

5. Following the fire and the defendant's election not to rebuild the main building the lease of May 25, 1961 remained, and still remains, in force with respect to the remainder of the demised premises not destroyed or dam-

aged by the fire and it was not terminated by the defendant's purported unilateral attempt to terminate it by her counsel's letter of June 22, 1967 to the plaintiff.

6. Under the lease, in the event of a fire and of the failure or refusal of the landlord to repair or restore the premises within a reasonable time thereafter, the right to terminate the lease is vested solely in the tenant, the plaintiff here, who has elected not to exercise that right.

7. The plaintiff is entitled, as tenant of the defendant under the lease of May 25, 1961, to remain in possession of the undamaged portion of the demised premises, namely all of the premises originally demised except the ground floor and basement of the destroyed main building and to have the use of the adjacent driveway leading to King Street, during the remainder of the term of the lease of May 25, 1961, and of the extended term if the option to extend is exercised by him, upon payment of the rent and the performance of the other conditions stipulated in the lease.

8. The plaintiff, so long as he remains in possession of any part of the demised premises, is obligated to pay the defendant rental at the rate of $200.00 per month up to June 1, 1971 and at the rate of $225.00 per month during the extended term of 5 years thereafter, if the option to extend the lease is exercised by the plaintiff.

9. The plaintiff is entitled to a judgment so declaring and enjoying the defendant from interfering with the quiet enjoyment by the plaintiff of the undamaged portion of the demised premises during the remainder of the term (and extended term, if any) of the lease so long as he pays the rent and performs his other obligations under the lease.

10. The plaintiff may have costs and an attorney's fee of $1,000.00.