[No. 11095. Department One.   July 22, 1914.]

PACIFIC WAREHOUSE COMPANY, *Respondent*, v. McKENZIE-HUNT PAPER COMPANY, *Appellant*.[1]

LANDLORD AND TENANT—LEASE—TERMINATION—ELECTION TO EXERCISE OPTION—REASONABLE TIME. Under a written agreement constituting a part of the same transaction as the execution of a lease of premises for the term of five years, whereby the lessor agreed to construct an overhead walk to the building if permit therefor could be obtained from the city within twelve months, and, if not obtained, the lessee should have the option to cancel the lease or amend same as mutually agreeable, where the lessee continues in possession for some months paying the rental stipulated by the lease, after notice from the lessor to forthwith exercise the option for terminating the lease because of failure to obtain the permit, the delay of the lessee for a period of six months to exercise his election is such an unreasonable time as to constitute a waiver of the right.

Appeal from a judgment of the superior court for King county, W. B. Stratton, Esq., judge *pro tempore*, entered September 23, 1912, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Affirmed.

*Trefethen & Grinstead*, for appellant.

*Preston & Thorgrimson*, for respondent.

CROW, C. J.—Action by Pacific Warehouse Company, a corporation, against McKenzie-Hunt Paper Company, a corporation, to recover rent alleged to be due upon a written lease. From a judgment in plaintiff's favor, the defendant has appealed.

[1] Reported in 141 Pac. 1147.

On April 25, 1910, respondent, in writing, leased to appellant, then known as McKenzie-White Paper Company, a portion of the Maritime building, in the city of Seattle, for the term of five years, at the monthly rental of $340. On the same date, and as a part of the same transaction, respondent also executed and delivered to appellant the following written agreement:

"In consideration of One Dollar to us in hand paid, we hereby agree to make application to the City Council for a permit for an overhead walk connecting the present overhead walk on the south side of Marion street, and extending across said Marion street, to connect with the doorway on the second floor at the south side of the building, known as the Maritime building.

"We further agree to use all honorable means of securing said permit, and as soon as same is granted, we agree to construct said overhead walk as aforesaid.

"If said permit should not be granted, or said walk constructed within a period of twelve months from date hereof, permission is given McKenzie-White Paper Company, at their option, to cancel the lease for part of the second floor and basement of said Maritime building made with them of even date herewith, or to amend same in such manner as shall be mutually agreeable to us, and to said McKenzie-White Paper Company.

"Dated this 25th day of April, 1910.

"Pacific Warehouse Co.,
"By E. Cardin, President."

It is conceded that respondent made every reasonable effort to obtain the necessary permit from the city, but failed to do so. There is evidence that, by mutual consent, the time for obtaining the permit was extended until about July 1, 1911, as it then seemed probable that the permit could be obtained. The permit was finally refused by the city authorities, with the result that the overhead walk could not be constructed. Thereafter, and on July 5, 1911, respondent orally notified appellant that the permit could not be obtained, and requested appellant to exercise its option. On

July 27, 1911, respondent served upon appellant the following written notice:

"Seattle, Wash., July 27, 1911.
"McKenzie-Hunt Paper Co., Seattle, Washington.

"Gentlemen: Referring to the lease between ourselves and you, executed April 25, 1910, and our communication to you upon the same date in regard to overhead walk:

"We hereby notify you that the city authorities have refused us the permit in said communication referred to.

"We hereby require you to exercise the option granted to you in said communication of terminating said lease, and to exercise said option forthwith. It is not, and never has been, our intention that the option therein referred to could be exercised by you at any time during the term of the lease, but that you were to exercise the option forthwith upon the happening of the contingency. We have no idea of being bound by a lease to you and you not being bound on the lease to us.

"Unless we receive a written communication from you within forty-eight hours from this date, saying definitely that you choose to terminate the lease or choose to continue the lease, we shall assume that your choice is to continue the lease.

"Yours respectfully,
"Pacific Warehouse Co.,
"Per E. Cardin, Pres."

There is some evidence to the effect that, about the same date, July 27, 1911, respondent leased to appellant, at the rental of $40 per month, additional floor space, which was then reasonably worth $100 per month. Respondent claims that this was done in consideration of appellant's oral agreement to waive its option to terminate the principal lease. Appellant denies this alleged oral agreement, claiming the lease of the additional floor space was an independent transaction having no relation whatever to appellant's option. In any event, appellant failed to notify respondent of its exercise of the option at any time prior to January 16, 1912, but continued in possession, paying rent according to the terms of the principal lease. On January 16, 1912, appellant, in writing, notified respondent that it then elected to cancel the lease, and that it would vacate the premises on February 29,

1912. On January 19, 1912, respondent, in writing, notified appellant that respondent denied appellant's right to then exercise the option, and that respondent would hold appellant for the rent during the remainder of the five year term. On February 29, 1912, appellant vacated the premises, and surrendered the keys to respondent's manager. There was evidence introduced by appellant tending to show that, at all times from July 17, 1911, until January 16, 1912, it was making an effort to consolidate with some other firm, or to close its business and sell its stock; that it succeeded in making a sale about January 16, 1912; and that it then had no further use for the premises after February 29, 1912. There was no evidence showing the extent of appellant's business or the value of its stock.

Several contentions are made by the respective parties, but the controlling question before us is whether appellant exercised its option to terminate the lease, and gave respondent notice of its election, within a reasonable time after respondent informed it that a permit from the city could not be obtained. Appellant insists that the wording of the written stipulation executed with the lease is only susceptible of the construction that appellant would be entitled to exercise its option at any time during the life of the lease, or at least within a reasonable time, and that it did elect to cancel the lease within a reasonable time. Respondent contends, and the trial court held, that it was appellant's duty to exercise the option within a reasonable time after being notified that respondent could not obtain a permit from the city, and that appellant neglected to do so.

It seems to us that respondent's contention must be sustained, even though the forty-eight hours fixed by respondent be held less than a reasonable time. In many states, statutes have been enacted which, in substance, provide that, when a leased building, without default or neglect upon the part of a lessee, is so injured by fire or by any other unavoidable cause as to render it unfit for occupancy, the lessee

shall not be liable thereafter for rent to the lessor.   Such statutes ordinarily provide that, upon the happening of such a contingency, possession of the premises shall be surrendered to the lessor.   In passing upon such a statute, the supreme court of Ohio, in *Gay v. Davey*, 47 Ohio St. 396, 25 N. E. 425, said:

"The obvious design of this statutory provision is, to relieve from hardship the tenant who has inadvertently neglected to protect himself by express covenant in his lease, against the necessity of paying rent, after the leased premises have been destroyed by fire or other casualty.   But, to secure the benefit of the statute, the tenant must surrender or yield up all that remains of the premises embraced in the lease, without any purpose or intention of resuming possession thereof. . . .

"In *Johnson v. Oppenheim*, 55 N. Y. 280, the court of appeals, in construing chapter 345 of the New York Laws of 1860, which is substantially the same as the statute of Ohio, *in pari materia*, say:

" 'The act provides that, upon the destruction or injury of leasehold buildings so that the same are untenantable, the tenant shall not be liable or bound to pay rent, and that he may thereupon quit and surrender the possession of the premises.   The tenancy is not made absolutely to cease, except at the option of the tenant.   He is relieved from his obligation, if he chooses to avail himself of the provisions of the act, or he may perform the covenants of his lease and retain the benefit of it; but he cannot have the benefit of the law, and, at the same time, repudiate its obligations.   If he elects absolution from its obligations, the act, by necessary implication, imposes as a condition the surrender of the premises."

See, also, *Roach v. Peterson*, 47 Minn. 462, 50 N. W. 601; *Flint v. Sweeney*, 49 Minn. 509, 52 N. W. 136; *Peticolas v. Thomas*, 9 Tex. Civ. App. 442, 29 S. W. 166.   Mr. Underhill, in vol. 2 of his work on Landlord and Tenant, commenting on the rights and duties of a lessee under such statutes, at § 791, says:

"A statute releasing a tenant from his liability for the payment of rent in case the premises are destroyed by fire or

other casualty does not terminate the lease where the tenant remains in possession. A tenant who claims the benefit of the statute must, within a reasonable time after the premises become unfit for occupation, elect whether he will move out or whether he will remain. He must move out promptly and if he shall remain in possession he waives his exemption under the statute. He cannot retain possession and, at the same time refuse to pay the rent. If he has once elected to remain he cannot subsequently change his intention and surrender the premises. This is the rule even where the statute is silent as to the necessity of a surrender by the tenant."

The stipulation upon which the appellant relies provided that, if a permit from the city should not be obtained or the walk should not be constructed within twelve months from the date of the lease, then appellant, at its option, might cancel the lease, or amend the same in a manner agreeable to the parties. It would seem that the doctrine of the cases and authorities above cited, although announced in construing statutes, should be applied to the stipulation now under consideration. We therefore conclude that appellant was required to exercise the option within a reasonable time, and that, having failed so to do, it must now be held to have elected a continuance of the tenancy created by the lease. It is manifest from the facts stated that the appellant did not exercise the option, or notify respondent of its election within a reasonable time. It is also apparent that appellant first attempted to surrender the premises and cancel the lease after it had disposed of its stock of goods, ceased to do business, and had no further use for the leasehold estate. Having failed to make its election in a reasonable time, appellant's liability for the payment of rent under the lease continued.

It is shown that respondent made every reasonable effort to obtâin a tenant for the building and thereby diminish appellant's liability; that it did receive a small amount of rental for which the trial court gave appellant credit. After giving this credit, judgment was entered for the amount due as

shown by the supplemental complaint.    The evidence sustains the findings made, which in turn sustain the judgment.
The judgment is affirmed.

MAIN, ELLIS, and GOSE, JJ., concur.