[Civ. No. 4367. First Appellate District, Division Two.—December 29, 1922.]

## CHANAN SINGH et al., Respondents, v. P. B. CROSS et al., Appellants.

[1] LANDLORD AND TENANT — TERMINATION OF LEASE — EXERCISE OF OPTION—TIME.—Where a lease of land to be planted to rice gave the lessees the option to terminate the tenancy in the event it was impracticable for the lessors to commence supplying water for the land by a fixed date, but did not specify the time within which the option should be exercised, the right accrued on such fixed date, but the lessees had a reasonable time thereafter within which to exercise the option.

[2] ID.—REASONABLE TIME—QUESTION OF FACT.—The question as to what is a reasonable time for the exercise of an option to terminate a tenancy under a lease which fixes no time for such exercise is one of fact depending upon the nature of the contract and the particular circumstances.

[3] ID.—EXERCISE WITHIN REASONABLE TIME—SUFFICIENCY OF EVIDENCE.—In this action to recover damages alleged to have been caused to plaintiffs by reason of the breach by defendants of their agreement to furnish water for leased land, the finding that the option, which was given by the lease to plaintiffs to terminate the tenancy for such breach, was exercised by them within a reasonable time was a proper one under all the circumstances in evidence.

[4] ID.—TERMINATION OF LEASE—PAYMENT FOR WORK DONE—CONSTRUCTION.—Under a lease of rice land which provided in the event it was impracticable for the lessors to commence supplying

water for the land by a fixed date, the lessees should have the option of terminating the tenancy, and in the event that such option was exercised they should serve written notice of such election upon the lessors, and "thereupon" the lessors would pay to the lessees the cost of the work "already done" by them, the latter were entitled to the cost of work done upon the land after such fixed date and up to the time of the notice of termination of the lease.

[5] ID.—NOTIFICATION OF TERMINATION OF LEASE—SUFFICIENCY OF.— Under a lease which provided for a written notice of termination, the fact that an oral notification was insufficient was immaterial, where a written notice was served four days thereafter and found to be within a reasonable time.

[6] WAIVER—EVIDENCE—PROOF OF.—Waiver may be shown by parol and proof of express language is not necessary, but it may be shown by circumstances or a course of acts or conduct.

[7] LANDLORD AND TENANT—TERMINATION OF LEASE—PAYMENT FOR WORK DONE—PRICE OF SEED SOWN INCLUDED.—Under a lease of rice land wherein the lessors agreed, in the event the lessees exercised the option to terminate the tenancy, they would pay to the lessees the cost of work already done by them, such cost was not limited to the actual cost of labor performed, but included the price of the seed used on the land.

[8] ID.—PAYMENT BY LESSORS UPON TERMINATION OF LEASE—OPTION —LIQUIDATED DAMAGES.—A provision in a lease that in the event of a breach by the lessors of their covenant to furnish water in time they would pay to the lessees the cost of the work already done by such lessees, and, in addition thereto, ten per cent of said cost, which the lessees agreed to accept in full payment and satisfaction of all damages, is enforceable as an option, regardless of whether it can be sustained as a provision for liquidated damages under section 1671 of the Civil Code.

[9] ID.—TERMINATION OF LEASE—PAYMENT FOR COST OF WORK DONE— RIGHT TO RENT PAID IN ADVANCE.—Under a lease of rice land wherein the lessors agreed in the event the lessees exercised the option given them to terminate the lease they would pay the lessees "the cost of work" already done by them, the lessees upon exercising such option were entitled to recover the rent paid by them in advance, since such payment was a necessary cost to the lessees before any work could be done upon the land.

[10] ID.—WAGES PAID TO EMPLOYEES—RIGHT OF RECOVERY.—Under such provision, the lessees were entitled to recover the wages paid by them to men whom they kept on the land to receive the water and apply it to the rice, where the lessors continually promised that the water would be furnished and requested that additional time be allowed them.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. George H. Cabaniss, Judge. Affirmed.

The facts are stated in the opinion of the court.

Bacigalupi & Elkus and Frank Freeman for Appellants.

Albert Jacoby for Respondents.

LANGDON, P. J.—This is an appeal from a judgment for four thousand dollars against the defendants P. B. Cross, Joseph Carlson, Alden Anderson, and Howard M. Payne in an action to recover damages alleged to have been caused to plaintiffs by reason of the breach by said defendants of an agreement for the leasing of certain lands in the county of Colusa, state of California.

The controversy arises over the construction of this lease, which covered a period of two years and in which plaintiffs were the lessees and appellants the lessors of a tract of land in Colusa County, California. The lessees agreed to pay a certain rental and to prepare the land for the planting of rice and to plant rice upon the same, and to do all irrigating, weeding, harvesting, sacking, threshing, and hauling of the rice. The lessor promised "to furnish water at his own cost and expense in an amount usual in said locality for maturing rice that may then be planted upon said premises, and agreed that said water shall be made available for use not later than the 25th day of April of each year of the term hereby created and to be furnished continuously during the season. In the event it is impracticable to commence the supply of water by the 25th day of April, 1918, then the lessee shall have the option of terminating this lease, and in the event that they exercise their option of so terminating the lease, they shall serve written notice upon the lessor notifying him of their election so to do. The lessor agrees thereupon to pay to the lessees the cost of the work already done by the lessees, and in addition thereto ten per cent of said cost, which the lessees agree to accept in full payment and satisfaction of all damages, demands and rights."

The trial court found that the lease had been made by the parties as set out in the pleadings; that pursuant to its terms the plaintiffs had entered upon the premises as lessees thereof and within proper season and in accordance with the proper manner of raising, cultivating, and maturing rice and in a good and farmer-like manner, prepared all of the land and performed all necessary development work upon said land to effect an efficient and proper handling of a rice crop thereon, during the seasons described in the lease, and did immediately sow the same to rice, and the said described lands and premises were, about the first day of May, 1918, properly prepared and within due and proper season and in accordance with the local custom of raising rice in the locality of said premises and were ready and in condition to receive irrigation water at that time.

The findings further recite that the plaintiffs were rice farmers of long experience; that in order to mature a rice crop upon said lands it was necessary that the same be supplied with an adequate amount of irrigation water in due and proper season; that on or about May 1, 1918, the plaintiffs demanded of said P. B. Cross, acting for himself and the said codefendants, a supply of irrigation waters to be delivered upon said lands, but at that time and at all times subsequent thereto, defendants failed and neglected to furnish a sufficient, adequate or any quantity of water for the purpose of irrigating said lands, except an amount to partially and inefficiently and inadequately supply about ten acres of said premises. That continuously, since about the first of May, 1918, to and including the fourth day of June, 1918, plaintiffs did from time to time demand of said defendants that they deliver to them to and upon said lands and premises a quantity of irrigation water sufficient to irrigate said lands so as to enable plaintiffs to grow and mature a crop of rice thereon; that from about May 1, 1918, plaintiffs demanded from time to time of defendants irrigation waters and defendants promised plaintiffs to deliver to them such waters according to the requirements of said lease, but at all times failed to do so in an adequate or in any quantity sufficient to mature a rice crop thereon; that at many times between the latter part of April, 1918, and the fifth day of June, 1918, plaintiffs demanded the receipt of irrigation waters upon said premises for said purposes

and the said P. B. Cross, for himself and his codefendants, by promises and inducements prevailed upon plaintiffs from time to time to await the delivery of water until defendants completed the construction of certain laterals and ditches running to the lands of plaintiffs, and that by said promises and inducements and overtures made by said defendants to said plaintiffs to the effect that water would be delivered immediately to said plaintiffs, said plaintiffs were induced and prevailed upon to defer and postpone the termination of said lease from time to time until the fourth day of June, 1918. That on the said fourth day of June 1918, at Willows, California, and after plaintiffs had done and performed the matters and things on said lands hereinbefore set forth, and as is in said lease provided, and in all other respects fully performed the said lease pursuant to its terms, and after said defendants had failed and neglected to carry out the terms and conditions of said lease contract with reference to furnishing or supplying an adequate, proper, and sufficient supply of water to and upon said lands as aforesaid, and after plaintiffs had been prevailed upon, as aforesaid, to defer any acts with respect to the termination of said lease, plaintiffs, verbally, notified defendant P. B. Cross, acting for himself and his codefendants that they did then and there terminate the said lease on account of defendants' failure to furnish a supply of water as aforesaid, and plaintiffs did then and there demand of defendant P. B. Cross, acting as aforesaid, the moneys expended by plaintiffs upon said lands and premises in the cost of work and development thereof, together with ten per cent of said moneys, and the said P. B. Cross, acting for himself and as aforesaid, did then and there demand of plaintiffs that they forthwith furnish to him a full and complete statement of their said expenditures and costs incurred up to and including the said fourth day of June, 1918, and did then and there agree to repay to said plaintiffs such moneys expended as aforesaid, together with ten per cent damages as provided for in said lease, and plaintiffs did prepare and submit such a statement to defendants on or about June 4, 1918, and said defendants failed, neglected and refused to pay the same; that said statement showed an expenditure of $4,405.54 by plaintiffs. Thereafter, and on or about June 5, 1918, at Willows, California, the said P. B. Cross, acting for himself

and as aforesaid, requested said plaintiffs to defer the termination of the said lease until July 15, 1918, and in the event the said defendants failed to supply the proper and necessary irrigation waters by said July 15, 1918, that the said defendants would then pay to said plaintiffs the moneys expended by them as aforesaid, together with the ten per cent provided for by said lease, and said defendants did further request said plaintiffs to remain upon said premises and apply the said waters when the same would be available about July 15, 1918, to the said lands prepared by plaintiffs, all of which the said plaintiffs did then and there refuse to do, placing no further reliance on defendants' promises.

Plaintiffs then went to San Francisco and sought advice and on or about the eighth day of June, 1918, and through their attorney at San Francisco, plaintiffs executed and served upon said defendant P. B. Cross, acting for himself and as aforesaid, an additional and further notice in writing of the termination of said lease; that said notices were given in due season, and in time to permit a crop of rice to be thereafter grown on said land, provided water could be thereafter supplied thereto. The said notices of termination of said lease given by plaintiffs as aforesaid, to said defendant, P. B. Cross, acting for himself and as aforesaid, were so given and served within a reasonable time, and pursuant to the terms of said lease agreement. During all the times that plaintiffs were engaged in preparing said lands and doing the work aforesaid, and up to the fifth day of June, 1918, the said defendant, P. B. Cross, and the agents and employees of said defendants were in, on or about the said described premises.

Before considering the law applicable to the facts as found by the trial court and recited herein, it seems expedient to consider the objections of the appellant that some of these findings are not sustained by the evidence. Particular objection is made to the finding that the premises were ready for irrigation water "about the 1st day of May, 1918." Appellants state in their brief that "the undisputed evidence is that the land was not even then sown to rice." In making this statement the appellants have overlooked the testimony of the plaintiff Chanan Singh, who stated several times that he had sown the rice the "first part of May."

He repeated this upon cross-examination and added the further definite statement: "I sowed the rice on the first day of May." This testimony is sufficient to sustain the finding of the court to which appellants object. The findings to the effect that the plaintiffs were induced to continue upon the land from time to time by reason of certain promises of the defendants are sustained by the testimony of the plaintiff Chanan Singh and also by the testimony of his attorney who discussed the matter with the defendant Cross.

[1] Before considering the finding that the plaintiffs exercised, within a reasonable time, their right to terminate the lease, we shall discuss the objection of appellants that the lease did not give to plaintiffs a reasonable time within which to exercise such option. This question, appellants concede, is the main issue in the case. The lessor agreed that water would be "made available for use not later than the 25th day of April of each year for the term hereby created and to be furnished continuously during the season." It was further agreed that "in the event that it is impracticable to commence the supply of water by the 25th of April, 1918, then the lessees shall have the option of terminating this lease." No date is specified at which such option must be exercised. It is apparent that the right to exercise the option accrued to the plaintiffs on April 25th, when the water was not furnished. No date being specified within which said option should be exercised, the plaintiffs would have a reasonable time within which to exercise the same. (Sec. 1657, Civ. Code.) Appellants also object to the finding that the option was exercised by the plaintiffs within a reasonable time. [2] The question as to what is a reasonable time for the performance of an act under a contract fixing no time for such performance depends upon the nature of the contract and the particular circumstances. It was a question of fact for the court in the present case. [3] The circumstance that the defendants continually promised plaintiffs that water would be furnished is material. Such promises would make it reasonable for the plaintiffs to wait, in good faith, from day to day. Furthermore, the defendants were not damaged by the delay. The court has found that the land was properly prepared and sowed with rice. The defendants were unable to furnish water until after June 1st. The land was valueless with-

out water, as no crop could be raised. Defendants, therefore, would have been unable to rent the land to anyone. As plaintiffs were working upon the land in anticipation of a crop, up to the time they terminated their lease, defendants' only loss occurs by reason of their own failure to furnish water. Had plaintiffs terminated the lease earlier, other lessees on the land could have done no more toward raising a crop in the absence of water for irrigation. It was at the request of the defendants that plaintiffs continued on the land, working on the same and expecting water from day to day. If defendants never reaped any benefit from this work, it was because of their failure to supply water. When it became evident that the water would be too late to assure plaintiffs a crop, they exercised their option to recover their expenditures and terminate the lease. Under all the circumstances in evidence, particularly the request of defendants, as narrated by Chanan Singh, that plaintiffs allow them a little more time to furnish water, and the additional circumstance that defendants could have been in no better position with regard to raising a crop on the land had plaintiffs abandoned the land earlier, we think the finding of the court that the option was exercised within a reasonable time was a proper one.

[4] Appellants contend that the trial court erred in considering evidence of work done upon the land after April 25th and up until the time of the notice of termination of the lease. Appellants' position upon this question is that, regardless of what might be a reasonable time in which to exercise the option, under the terms of the lease, the obligation of the lessors was fixed and limited by the situation of the parties on the day the option accrued— April 25th. In other words, it is contended that the lessors were only obligated to pay for work done up to April 25th, and although the plaintiffs might have a reasonable time thereafter within which to exercise their option, they must discontinue work upon the land during that time, or do such work without hope of being compensated therefor, although defendants were requesting them to continue their work. It must be admitted that this question is one that is not free from difficulties, but we are of the opinion that, in regard to this matter, the contract is susceptible of the interpretation placed upon it by the trial court. It pro-

vides: "On the event that it is impracticable to commence the supply of water by the 25th of April, 1918, then the lessees shall have the option of terminating this lease, and in the event that they exercise their option (within a reasonable time) of so terminating the lease, they shall serve written notice upon the lessor, notifying him of their election so to do. The lessor agrees *thereupon* (upon the service of such notice) to pay to the lessees the cost of the work *already done* by the lessees." The language inserted by us in parentheses in the above quotation seems to us to be the sense of the provision and to warrant the interpretation placed by the trial court upon the instrument. Conceding that the plaintiffs had a reasonable time within which to exercise their option to terminate the lease and to give notice thereof, it would seem to follow that the word "thereupon" refers back to the time of service of such notice, and the words "work already done" refer to work done at the time of such notice and payment.

[5] Appellants urge that the evidence does not show a waiver of written notice of termination and, therefore, the oral notification of June 4th was insufficient. Even though this be conceded, it would not avail appellants, for it was found that within four days thereafter, plaintiff served upon defendants a written notice of termination and it was found that this written notice was served within a reasonable time.

The testimony in the record to which appellants object on the ground that it varied by parol a written agreement was not admitted for that purpose. It was admissible for other reasons. Some of it was directed to ascertaining what was a reasonable time for the exercise of the option, an inquiry which was proper because no time was specified for this act. A large part of such testimony was also admissible upon the question of whether or not the provision for written notice had been waived. The trial court found that it had been waived. [6] Waiver may be shown by parol. Proof of express language is not necessary, but a waiver may be shown by circumstances or a course of acts or conduct. (*Knarston* v. *Manhattan L. Ins. Co.*, 124 Cal. 74 [56 Pac. 773]; *Frank & Co.* v. *New Amsterdam Co.*, 175 Cal. 293 [165 Pac. 927]; *Faris* v. *American Nat. Ins. Co.*, 44 Cal. App. 48 [185 Pac. 1035].) Appellants have discussed

the evidence at some length in an effort to prove that a waiver was not shown. The question is a nice one, but is not decisive in the present case, nor necessary to be determined herein, for the reason that the plaintiffs' case does not rest, necessarily, upon a waiver of the written notice, it having been found, as hereinbefore stated, that the written notice was given four days after the oral one and within a reasonable time.

[7] Appellants' objection that the judgment should not include the price of the seed used on the land but merely the actual cost of labor performed is without merit. The portion of the contract under which recovery was had is: "The lessor agrees thereupon to pay to the lessees the cost of the work already done by the lessees, and in addition thereto ten per cent of said cost, which the lessees agree to accept in full payment and satisfaction of all damages, demands and rights." "The cost of the work," assuredly, includes the cost of all items which enter into such work. The board of the men doing the work, repairs to the machinery employed are all items that enter into the cost of the work (*Betts* v. *Orton*, 34 Cal. App. 397 [167 Pac. 1147]), and likewise, we think, the cost of the seed which was planted with the labor for which reimbursement was to be made.

The appellants' contention that the rent should not be included in the judgment under the provision for repayment of cost of work presents a close question. But before discussing that phase of the case it seems pertinent to consider the validity of the entire clause upon which plaintiffs' recovery was based, because a considerable portion of the appellants' brief was devoted to that question.

[8] This action was brought to recover damages under the express provisions of the contract, by which the parties agreed that in the event of a breach by the lessors of their covenant to furnish water in time, they would pay to the lessees the cost of the work already done by the lessees and, in addition thereto, ten per cent of said cost, which the lessees agreed to accept in full payment and satisfaction of all damages, demands and rights. Appellants urge that this provision of the contract does not fall within the exception created by section 1671 of the Civil Code, permitting the parties to a contract to agree therein upon an amount which

shall be presumed to be the amount of damages sustained by a breach thereof when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages; and that even if it does fall within the exception above referred to, plaintiffs have not alleged or proved that the facts in this case were such as to bring the case within the operation of section 1671 of the Civil Code. Appellants, however, do concede that this provision of the contract is enforceable as an option given to the plaintiffs on the happening of a certain condition, namely, the failure of the defendants to furnish water within a specified time, and they cite cases as follows: *Wilson* v. *Graham,* 14 Tex. 222; 13 Cor. Jur. 608, sec. 640; *Foxley* v. *Rich,* 35 Utah, 162, 179 [99 Pac. 666]; *Jackson* v. *Beers,* 14 Cal. 189, 193.

It seems immaterial, therefore, whether the provision be sustained as one for liquidated damages or as a provision granting to the plaintiffs an option. The provision is one that will be enforced by the courts, the plaintiffs have relied upon it and have recovered thereunder.

[9] We shall now return to a consideration of appellants' contention that the amount of the rent paid by the lessees should not have been recovered by them. Examining the entire contract to ascertain the intention of the parties and the construction put upon the words "cost of the work" by them, we find in paragraph 12 of the lease a provision that in the event the lessor makes a sale of the land before the rice has been planted thereon and after the land has been prepared or partially prepared for planting, the lessor will pay for the lessees "the cost of the work" in preparing said land. Could it be seriously contended that it was the intention of the parties that upon a sale of the land the rent paid in advance should be retained by the lessor? Would not the words "cost of work" be given a sufficiently liberal construction to include the rent? We think so, and we can see no reason why the same broad construction should not be given to the same expression in paragraph 18 of the lease. That the lessees were to lose the rent paid in advance, notwithstanding the fact that the cost of the work, plus ten per cent, was to be paid them upon breach of the contract by the lessor is so unthinkable, unreasonable, unjust, and inequitable, that no court would believe that such was the intent of the parties, and we are

impelled to give the expression "cost of work" a meaning broad enough to include the rent.

It was said in *Hayne* v. *San Francisco,* 174 Cal., at page 189 [162 Pac. 627], in defining the phrase "cost and expenses," and considering allowances made to owners of abutting property for damages caused by the construction of a tunnel: "We think the phrase should be given a broader meaning. The grant of power to cause the construction of the tunnel, of itself, implies a grant of sufficient incidental powers to accomplish that object. The constitution (sec. 14, art. I) requires the payment of all damages to abutting owners before such tunnel can be constructed. The payment thereof would be one of the necessary expenses of accomplishing the result desired. It is true it would not be a part of the expense of actual construction. The right thus paid for would not technically be a part of the material for the construction of the tunnel, but it is none the less an expense essential to such construction. The making of plans and surveys which precede the construction creates no material which goes into the work, but the cost thereof is uniformly understood to be an expense of the work. We think the payment of damages made imperative by the constitution is as much an expense or cost of the tunnel as the expense of preliminary surveys and plans, and that the charter gives the power to include it in the assessment."

So, in the instant case, before any work could be done upon the land, the rent was a necessary cost to the lessees just as the preliminary surveys and plans for checking and leveling the land were necessary costs before a scraperful of dirt was moved. As was said in the case of *Hayne* v. *San Francisco, supra:* "Each case must depend upon its own context and upon the object and purpose to be accomplished and the effect of the narrower or broader meaning upon such object, which considerations here point to the more liberal construction above stated."

[10] Appellants contend that the judgment violates the stipulation of the parties as to the cost of preparing the land. The agreed price of preparing the land was $13 an acre. There were 160 acres, making a total of $2,080. The rental paid was $960. These sums, plus ten per cent, would make a possible total of $3,340. The judgment was for

$4,000, an excess of $660, which is accounted for by the fact that the record contains testimony that after the rice was all planted (May 1, 1918), men were kept constantly upon the property until it was surrendered to defendant (about June 5, 1918) to be in readiness to receive the water should it be furnished as promised by the defendants. This was a necessary and proper expense in connection with the work of raising a crop. The plaintiff, Chanan Singh, testified that, after May 1st, he kept four men working on the land every day putting in water-gates, building up and reinforcing the levees where they were weak and low, and similar work. For the services of these men, five dollars a day each was charged, and the statement of expenses offered in evidence shows an item of $620 for the wages of these men in May and $50 for the wages of two men for the first five days of June. As the trial court very pertinently remarked, it was reasonable and necessary for these men to be so employed while they were waiting from day to day to receive the water and apply it to the rice. This being true, it was proper for the plaintiffs to recover the amount expended for this service, and when allowance is made for this sum, it appears that the judgment is not excessive.

The judgment is affirmed.

Nourse, J., and Sturtevant, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 26, 1923.

All the Justices present concurred.