[Civ. No. 307. Fourth Appellate District.—February 20, 1931.]

KUTNER–GOLDSTEIN COMPANY (a Corporation), Respondent, v. ESAU WORKMAN, Appellant.

J. L. C. Irwin for Appellant.

J. W. Ferguson and Clarence H. Wilson for Respondent.

BARNARD, P. J.—In April, 1926, the plaintiff sold to the defendant a new grain binder and engine, which proved defective during the ensuing harvesting season. A new contract was entered into in writing between the parties on the twenty-fourth day of August, 1926, providing for the sale of the binder and engine to the defendant for $515, $104 of which was paid in cash, and the defendant agreed to pay the balance of $411 on June 15, 1927. At the same

time the plaintiff signed and delivered to the defendant a letter reading as follows:

"Relative to grain binder, as per contract signed today, this is to advise that we will, at our expense, put same in and turn same over to you in satisfactory working condition, within a reasonable time."

At that time the defendant had completed the harvest of all of his crops for the year 1926, and it is admitted that he had no use for the binder until the harvesting season of 1927. On January 13, 1927, the plaintiff wrote to the defendant as follows:

"Regarding the binder there is nothing we can do until about the time you are ready to use this, and if you will give us a few weeks notice we will then proceed to get same in first class working condition."

The defendant testified that he did not recall getting this letter, but that he might have gotten it. On or about May 10, 1927, an employee of the plaintiff, with a representative of the company that manufactures the binder, went to the defendant's ranch for the purpoe of putting the binder in condition. The record shows that the defendant told these visitors that the big portion of his grain was then too ripe to cut with a binder; that he couldn't accept the machine; and that he did not want it. The visitors left without fixing the binder, and on June 10, 1927, the defendant served upon the plaintiff a written notice of rescission of the contract. On June 17, 1927, the plaintiff brought this action to recover the balance due, according to the contract. In his answer, the defendant set up the defense that the plaintiff had not complied with its agreement, in that it had not repaired the binder as agreed, and that he had rescinded the contract, and a return of the $104 already paid was prayed for. The action was tried before the court without a jury. The court found that the binder and engine were not in working condition, but that the plaintiff had agreed to put the same into satisfactory working condition; that on or about the tenth day of May, 1927, the plaintiff sent employees to the defendant's ranch to properly repair the binder and engine; that at that time the defendant told these employees that he would refuse to accept the binder and engine, even if the same were put in good condition and properly repaired; that as a consequence of the refusal of

the defendant to accept the binder and engine, the plaintiff did not put the same into working condition; and that the said visit of the plaintiff's employees to the defendant's ranch occurred within a reasonable time after the execution of the written contract of August 24, 1926. This appeal is from the judgment for the plaintiff, which followed.

█ It is admitted by all parties that the machinery was not in proper working condition. Appellant's first contention is that the finding that he told respondent's employees that he would refuse to accept the binder and engine even if the same were put into good working condition is not supported by the evidence. Without further referring to the record, we have no hesitation in saying that this contention is without merit.

█ Appellant next argues that the finding that the visit of respondent's employees to appellant's ranch on or about May 10, 1927, was within a reasonable time after the execution of the contract, is not supported by the evidence. We feel that this point is well taken, and that the same is determinative of this appeal. While appellant argues that, under the provisions of section 1657 of the Civil Code, these repairs should have been made immediately after August 24, 1926, it will be noted that the agreement relied upon is silent as to the exact time when the repairs shall be made, but that it provides that the machine is to be turned over in satisfactory working condition "within a reasonable time". To determine whether or not it was put in satisfactory working condition involved testing it in actual use, and since the harvesting season of 1926 was past, it could not be so tested until the next season. Under the circumstances, a reasonable time would be such a time as permitted such test, and also a time which would work no injury to the defendant. We think this must be held to be a time making it available for the harvesting of the next crop, in the year 1927. █ One element in determining whether the time is reasonable, is whether it is within such time as will work no injury on the other party. (*Spaeth* v. *Ocean Park etc. Inv. Co.*, 16 Cal. App. 329 [116 Pac. 980].) It seems apparent that if this machine was not repaired in time to harvest the crop of 1927, it would result in injury to the appellant. Whether the attempt of the respondent to put the machinery into the required condition was made

within a reasonable time, as found by the trial court, depends then upon whether this was done in time for the harvesting of the crop of 1927. As to the fact in that regard, the appellant testified that when the respondent's employees came to his ranch to repair the binder, his grain was too ripe to cut with a binder; that it is necessary to cut grain with a binder before it is near so ripe; that this must be done long before it may properly be harvested with a harvester; that if you try to cut grain with a binder after it is overripe, the binder does not work well, you can't do much with it, and the grain shatters out; but that if you cut it with a binder at the right stage, it can be handled by the machine with little waste and the grain is all of good quality. Appellant's son testified that he was present when respondent's employees visited the ranch, and that at that time, it was too late to harvest this grain with a binder. This evidence is uncontradicted, so far as shown by the record. ■ However, the respondent argues that the court could take judicial notice of the fact that a wheat harvest in Kings County, in an ordinary year, begins some time between June 15th and July 1st, and that it practically never commences before June 1st. In support thereof it cites *Haines* v. *Snedigar*, 110 Cal. 18 [42 Pac. 462, 464]. In that case the opinion states that the court could take judicial notice of the fact that in San Joaquin County, "the time for harvesting of small grain has arrived on the eleventh of July". Not only do we find no evidence in this record to show that the grain growing upon appellant's ranch was wheat, rather than some other variety of grain, but there is a wide difference between taking judicial notice that a general harvesting season for small grain has arrived by the 11th of July, and taking judicial notice that on a certain day in May, it is not too late for a particular method of harvesting a certain grain, the variety of which is unknown to the court. In addition to all other considerations, the degree of ripeness of grain on a specific day would vary in different seasons, even though the season be considered ordinary, and there is no evidence here that this was an ordinary season. Under the circumstances here presented, the doctrine of judicial notice may not be invoked to contradict the direct evidence upon the fact. Upon the

record before us, it must be held that the finding in question is not supported by the evidence.

█ Respondent further contends that May 10, 1927, was a reasonable time within which to offer to repair the machinery because of the letter of January 13, 1927, asking for a few weeks' advance notice, and that respondent was entitled to wait, relying upon the appellant to give such notice before he was ready. While it would appear that appellant might well have complied with this request, we know of no rule of law that compelled him to do so, or that permitted respondent to delay in the belief that he would.

A number of other points are raised, which require no consideration. The entire controversy turns on whether respondent's attempt to repair the binder was made within a reasonable time. While no legal obligation rested upon the appellant to notify the respondent, as requested, a few weeks ahead of the time when he should need the machine, the fact that he did not do so, with other circumstances, rather indicates that he desired to avoid the contract. Because of this, and the fact that the evidence which is missing from this record may be available to respondent, we think the case should be retried.

The judgment is reversed and the cause remanded for a new trial.

Marks, J., and Jennings, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 16, 1931, and a petition by respondent to have the ° cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 20, 1931.