[Civ. No. 19460. Second Dist., Div. Three. June 17, 1953.]

ALBERT ALPERN et al., Respondents, v. MAYFAIR MARKETS (a Corporation), Appellant.

Mitchell, Johnson & Bates for Appellant.

Walter E. Egerman and Robert Silver for Respondents.

VALLÉE, J.—Plaintiffs brought this action for declaratory relief to determine whether a lease entered into by plaintiffs' assignor as lessor, with defendant as lessee, is subsisting or had been terminated. The answer hinges on whether defendant-lessee exercised an option to terminate the lease within a reasonable time.

The lease was made June 28, 1948, for a term of 25 years. The demised premises consisted of a market building and a parking lot. The lease contained this provision:

"If, during the said term, the premises are destroyed by

fire, or other action of the elements, or are partially so destroyed so as to cause them to be wholly unfit for occupancy, or if they are so badly injured that they cannot be repaired with reasonable diligence within 180 days of such destruction or injury, then this lease shall, at the option of Lessee, terminate as of the date of such destruction or injury, and said Lessee shall immediately surrender and yield up said premises and all interest therein to the Lessor, in which event the Lessee shall not be liable for any further payments of rental on account of this lease; and the Lessor may, in that event, re-enter and repossess said premises discharged from this lease, and may remove all persons therefrom.''

On July 6, 1951, the building was destroyed by fire to such an extent as to make it unusable for any purpose.

The court found: The premises could have been completely restored to the condition they were in immediately before the fire within 180 days; the lease was not terminated by the destruction of the premises; defendant had the right and option to terminate the lease within a reasonable time after receiving notice of the destruction of the premises by fire; on July 6, 1951, defendant had actual notice of that fact and then knew it had the option to terminate the lease because of such destruction; two weeks was a reasonable time for the exercise of the option; defendant did not exercise the option within a reasonable time, or at all, except that on August 29, 1951, it did attempt to assert its right to then exercise the option; plaintiffs did not acquiesce in said attempted termination of the lease; plaintiffs have not accepted the surrender of the premises; plaintiffs are obligated to restore the premises to the condition they were in before the destruction by fire, and 180 days is a reasonable time within which to perform said obligation.

The judgment decreed that the lease is valid and subsisting and that plaintiffs are obligated to restore the building within 180 days after the judgment shall become final. Plaintiffs were awarded $1,250 attorneys' fees. Defendant appeals.

Defendant's contentions are: (1) The determination of the question whether defendant exercised its option to terminate the lease within a reasonable time is solely a question of law. (2) Defendant validly exercised its option to terminate the lease within a reasonable time. (3) Plaintiffs are not entitled to an award of attorneys' fees.

The facts, except as to the reasonable value of the attorneys' services, were stipulated.

On July 6, 1951, the day of the fire, plaintiffs, by letter, informed defendant of the fire and requested it "to make an election to remain as tenants" since they preferred to have it remain "rather than cancel"; that they elected to rebuild; and requested defendant to send them a certified copy of a resolution of its directors showing their decision in the matter. Thereafter plaintiffs and defendant had numerous and extensive verbal conferences and discussed at length the best manner and method of rebuilding the market building. At the insistence of defendant and because of its desire to make certain changes in the floor plan of the building to be reconstructed, defendant, by letter dated August 6, 1951, extended the time for rebuilding an additional 60 days. The letter in relevant part reads:

"Under paragraph X of the lease, you are permitted 180 days to repair the premises.

"The undersigned desires to make certain changes and submit plans for certain changes, such as new fixture outlay, etc.

"Therefore, in consideration of the right of the undersigned to make said certain changes, subject to your approval, and conditioned upon our right to make such changes, the undersigned extends the 180 day time by a further additional 60 day period and the undersigned will very shortly submit a new fixture layout plan and other plans for changes to you."

"Almost immediately thereafter" defendant submitted a tentative floor plan "for fixture layout" to plaintiffs and informed them they (plaintiffs) would have to pay all additional costs for the changes required by defendant. Plaintiffs told defendant they would not pay the additional amount, which was estimated to be $50,000. Plaintiffs then offered to reconstruct the building in exact conformity with the original plans and specifications.

On August 24, 1951, defendant sent this letter to plaintiffs' attorney:

"Reference is made to your letter of July 6, 1951, wherein you request, on behalf of your clients Mr. Stanley Krell and Mr. Albert Alpern, that we make an election to remain as tenants under the lease covering subject premises.

"As you know, we have withheld making such an election and withheld exercising our option to terminate the lease, pending negotiations with your clients with reference to rebuilding the market with certain changes which we deem necessary for efficient and profitable operation. Our ex-

perience with the old building indicated the changes we desire are so important to the proper operation of the market that we prefer not to continue under the lease unless the changes are made.

"We now understand it is the intention of your clients to rebuild the market in accordance with the old plans and specifications. It is therefore necessary to advise you that if the market is to be rebuilt without the changes we desire we shall exercise our option to terminate the lease as provided in Paragraph X thereof.

"In order that we may make our final determination to remain under the lease or to terminate, we will need a clear statement from you or your clients as to their decision in the matter.

"If there are any questions, or additional information is desired, do not hesitate to call."

It was stipulated that the facts stated in the letter are true.

On August 27, 1951, plaintiffs' attorney sent this letter to defendant:

"Receipt is acknowledged of your letter of August 24, 1951, purportedly in answer to ours of July 6, 1951.

"Please be advised that my clients, Mr. Stanley Krell and Mr. Albert Alpern, plan to rebuild the building occupied by your company in Bellflower, and owned by my clients, in the same condition it was in prior to the fire.

"I am advised by my clients that the changes proposed by you entail additional outlays of considerable sums of monies which my clients are not willing to expend, without equal savings being effected with your permission and cooperation.

"It is quite possible by a simple matter of give and take that a meeting of the minds can be accomplished.

"Mr. Stanley Krell and Mr. Albert Alpern can definitely rebuild the building within six months from September 6, 1951, which is within the time as extended by your mutual consent and agreement.

"In order to set the records straight, please note that as long as my clients elect to rebuild the building, you have no option to terminate the lease whatsoever."

On August 29, 1951, defendant replied to the letter of August 27th, stating it took exception to plaintiffs' interpretation of the lease and asserting it had an option to terminate. The letter concluded:

"Although it is hoped we may reach a satisfactory solu-

tion which is fair both to ourselves and your clients, it is now necessary to advise you that we do hereby exercise our option to terminate the lease dated June 28, 1948 between Gerama Investment Company, as Lessor, and Mayfair Markets, as Lessee, covering the premises, including surrounding parking area, known as 17602 Bellflower Boulevard, Bellflower, California. This termination is pursuant to paragraph X of said lease and is effective July 6, 1951, in accordance with the provisions of said paragraph X.''

On September 11, 1951, a conference was had between plaintiffs and defendant, following which plaintiffs' attorney wrote defendant:

''This will confirm our conference today in your office at which were present yourself and your associates, Mr. J. E. Garrett and Mr. Allen Tingey, together with my friend, Mr. Robert Silver and myself.

''At this meeting it was generally understood that we would attempt for the next 30 day period to try to come to some amicable agreement concerning the rebuilding of the market at Bellflower.

''This letter will also restate the position of myself and my clients which was made plain to you at the conference today, that we consider Mayfair Markets legally bound under the lease and that you have breached your contract by wrongfully attempting to cancel the lease.

''Therefore, in the next 30 day period if we can come to some amicable conclusion so that your cancellation of this lease could be withdrawn and the market building built, that would be the desire of my clients and myself.

''In order that no rights of any party are waived, may I suggest that you write me a letter similar to the one you wrote on August 6, 1951, and I attach a rough draft of such proposed letter which you may follow or change in accordance with our verbal conversation of today.''

The parties stipulated that the oral agreement referred to was not proved.

On September 17, 1951, defendant wrote plaintiffs stating that ''in view of our previous termination of the lease there is no basis for an extension of any nature and that any future discussions must be in contemplation of a new lease.''

It was stipulated that the building could have been rebuilt within 180 days from its destruction. Plaintiffs have not acquiesced in or accepted the surrender or cancellation of the lease.

The right to exercise the option accrued on July 6, 1951, when defendant was notified the building had been destroyed. (*Singh* v. *Cross*, 60 Cal.App. 309, 315 [212 P. 946]; *Pacific Warehouse Co.* v. *McKenzie-Hunt Paper Co.*, 80 Wash. 489 [141 P. 1147, Ann.Cas. 1916B 303, 305].) When an option agreement is silent as to the time for exercise, the optionee must exercise his option within a reasonable time. (*Lohn* v. *Fletcher Oil Co., Inc.*, 38 Cal.App.2d 26, 31 [100 P.2d 505]; *Singh* v. *Cross*, 60 Cal.App. 309, 315 [212 P. 946].) The question of what constitutes a reasonable time is ordinarily one of fact, to be determined from all the circumstances of the particular case. Where the facts are not disputed, the question is one of law. ( *C. O. Bashaw Co.* v. *A. U. Pinkham Co.*, 77 Cal.App. 591, 594 [246 P. 1064].) The facts to be considered in determining the question include, among others, the conduct of the parties, delay to act, acquiescence in delay, whether the delay is for unfair purposes, the construction which the parties themselves placed upon their contract, and whether the optionee acts within such time as will work no injury to the other party. (*Lyon* v. *Goss*, 19 Cal.2d 659, 673 [123 P.2d 11]; *Kutner-Goldstein Co.* v. *Workman*, 112 Cal.App. 132, 135 [296 P. 313]; *Clovis Fruit Co.* v. *California W. Assn.*, 40 Cal.App. 623 [181 P. 229].) The party against whom an option is to be exercised may waive compliance with provisions designed for his benefit. (Civ. Code, § 3268; *Snidow* v. *Hill*, 87 Cal.App.2d 803, 808 [197 P.2d 801]; *Singh* v. *Cross*, 60 Cal.App. 309, 317 [212 P. 946]; 51 C.J.S. 656, § 91.) Proof of express language is not necessary to show a waiver, but it may be shown by circumstances or a course of declarations, acts, or conduct. (*Snidow* v. *Hill, supra*, p. 808; *Singh* v. *Cross, supra*, p. 317.)

In reversing a finding of a trial court that a party had not exercised its option to cancel contracts within a reasonable time, the court, in *Clovis Fruit Co.* v. *California W. Assn.*, 40 Cal.App. 623, stated (p. 626 [181 P. 229]):

"Time, in the abstract, is not essential. It is material so far only as, when associated with other circumstances, it may produce injury or unjust consequences. The great object of the rule of law on this subject is to prevent injury or wrong; and the main question in each case should be, Is there any just cause, because of delay, to object to the cancellation?"

In *Singh* v. *Cross*, 60 Cal.App. 309 [212 P. 946], **the plain-**

tiffs were the lessees and the defendants the lessors under a lease of land for the planting and harvesting of rice. The lessors agreed to furnish the necessary water and to have it available for use not later than the 25th of April of each year. The lease provided that "In the event it is impracticable to commence the supply of water by the 25th day of April, 1918, then the lessee shall have the option of terminating this lease, and in the event that they exercise their option of so terminating the lease, they shall serve written notice upon the lessor notifying him of their election so to do," and that in such event the lessors would pay the lessee the cost of the work already done by them. The lessors did not make water available as agreed. The trial court found "that at many times between the latter part of April, 1918, and the fifth day of June, 1918, plaintiffs demanded the receipt of irrigation waters upon said premises for said purposes," and that the lessors "by promises and inducements prevailed upon plaintiffs from time to time to await the delivery of water until defendants completed the construction of certain laterals and ditches running to the lands of plaintiffs, and that by said promises and inducements and overtures made by said defendants to said plaintiffs to the effect that water would be delivered immediately to said plaintiffs, said plaintiffs were induced and prevailed upon to defer and postpone the termination of said lease from time to time until the fourth day of June, 1918." On June 4th the lessees gave the lessors oral notice of termination of the lease, and on June 8th gave them written notice. In holding that a finding that the notice of June 8th was within a reasonable time was a proper one, the court said (p. 315) : "The question as to what is a reasonable time for the performance of an act under a contract fixing no time for such performance depends upon the nature of the contract and the particular circumstances. It was a question of fact for the court in the present case. The circumstance that the defendants continually promised plaintiffs that water would be furnished is material. Such promises would make it reasonable for the plaintiffs to wait, in good faith, from day to day. Furthermore, the defendants were not damaged by the delay. . . . When it became evident that the water would be too late to assure plaintiffs a crop, they exercised their option to recover their expenditures and terminate the lease. Under all the circumstances in evidence, particularly the request of defendants, as narrated by Chanan Singh, that plaintiffs allow them a little more time to furnish water, and

the additional circumstances that defendants could have been in no better position with regard to raising a crop on the land had plaintiffs abandoned the land earlier, we think the finding of the court that the option was exercised within a reasonable time was a proper one.''

The destruction of the building did not terminate the lease. It remained in full force and effect unless terminated by the exercise, within a reasonable time, of the option given to defendant. Defendant, in its answer, pleaded all the facts stipulated except that the building could have been rebuilt within 180 days from its destruction, and that plaintiffs had not acquiesced in or accepted the surrender or cancellation of the lease. ██ We are of the opinion that the stipulated facts constituted a waiver by plaintiffs of their right to claim the option was not exercised within a reasonable time. On July 6, 1951, plaintiffs asked defendant to make an election to remain as tenants, and said they (plaintiffs) preferred to have defendant remain rather than cancel the lease. Immediately thereafter the parties entered into and had numerous and extensive negotiations looking to the rebuilding of the market building, which continued until about August 29th. These negotiations constituted a withdrawal of the request of July 6th. Plaintiffs knew defendant was withholding a decision on whether to terminate the lease until the parties either agreed or disagreed as to proposed changes. In fact the parties stipulated that plaintiffs knew defendant withheld making an election and withheld exercising the option pending the negotiations with respect to rebuilding with changes. Plaintiffs did not, while the negotiations were taking place, insist on defendant's making an election. It is obvious that the negotiations discouraged defendant from making an immediate election and from exercising the option. It is clear, also, that plaintiffs were hopeful that an agreement would be reached and that defendant would continue as their tenant. When it appeared to defendant that the negotiations were coming to a standstill, it asked plaintiffs for a clear statement of their decision in the matter. It was then, on August 27th, that plaintiffs, in writing, told defendant they were going to rebuild the building in the same condition it was in prior to the fire and that it had ''no option to terminate the lease whatsoever.'' Two days later, on August 29th, defendant exercised the option. On the basis of the negotiations, defendant granted plaintiffs an additional 60 days in which to rebuild. There was no reason why defend-

ant should exercise the option so long as it appeared from plaintiffs' declarations, acts, and conduct that there appeared to be a fair prospect the negotiations would be successful. There was no evidence that the delay worked any hardship on plaintiffs. In fact, they were granted an additional 60 days within which to rebuild.

Furthermore, it appears that until about August 27th both parties were laboring under the mistaken belief that defendant did not have the right or option to terminate the lease if plaintiffs rebuilt within 180 days after the fire. In its letter of August 6th, defendant said, "Under paragraph X of the lease, you are permitted 180 days to repair the premises." The lease did not so provide. It provided, as one ground on which defendant had an option to terminate, that if the premises "are so badly injured that they cannot be repaired with reasonable diligence within 180 days of such destruction or injury, then this lease shall, at the option of Lessee, terminate as of the date of such destruction or injury, . . ." In its letter of August 27th, two days before defendant exercised its option, plaintiffs told defendant: "In order to set the records straight, please note that as long as my clients elect to rebuild the building, you have no option to terminate the lease whatsoever." Acquiesence in error takes away the right of objecting to it. (Civ. Code, § 3516.)

It is suggested that if defendant desired to exercise the option to terminate the lease, it was obligated to do so immediately on the destruction of the building. The argument is fallacious. The lease does not say that the lessee has the option to terminate the lease immediately on destruction of the building; it says that on the exercise of the option defendant will immediately surrender the premises.

We hold, on the agreed facts of this case, that defendant exercised its option to terminate the lease within a reasonable time.

In view of this conclusion it is unnecessary to consider defendant's point with respect to the award of attorneys' fees.

Since the facts were stipulated a reversal with directions is appropriate.

The judgment is reversed with directions to the superior court to amend its findings of fact and conclusions of law in accord with the views herein expressed, and to render judgment for defendant as prayed for in its answer.

Shinn, P. J., and Wood (Parker), J., concurred.