DORATHEA HELENE FLINT, Plaintiff-Appellant
v. JOHN SHERIDAN MacKENZIE, JAMES HEALANI
MacKENZIE, and HAWAIIAN RESORTS, LIMITED,
Defendants-Appellees

No. 5085

August 24, 1972

RICHARDSON, C.J., ABE, LEVINSON, KOBAYASHI, JJ.,
AND WONG, CIRCUIT JUDGE, FOR MARUMOTO,
J., DISQUALIFIED

OPINION OF THE COURT BY WONG, CIRCUIT JUDGE

Plaintiff, Dorathea Helene Flint, hereinafter referred to as "Lessor", brought action for damages allegedly caused by the breach of a lease agreement by John and James

MacKenzie and Hawaiian Resorts, Limited, Defendants, hereinafter referred to as "Lessees". The Lessees counterclaimed seeking specific performance of an option to purchase provision in the lease as well as monetary damages allegedly suffered by them by reason of the Lessor's failure to respond to the exercise of such option by Lessees.

On August 25, 1970, the Judge of the Ninth Division of the First Circuit Court granted Lessees' motion for summary judgment, holding that the Lessees had the right to exercise the option to purchase under the lease and that the offer made on July 29, 1969, was a valid exercise of such option.

On October 12, 1970, the Judge of the Fourth Division of the First Circuit Court granted Lessees' motion to dismiss Lessor's amended complaint for damages.

On December 31, 1953, the respective parties (or their predecessors in interest) entered into a 55-year lease of real property on Tusitala Street in Honolulu, Hawaii, beginning January 1, 1954, and extending to December 31, 2009, with an option to renew for an additional 60 years. At the expiration of the lease, the land was to be surrendered to the Lessor together with the buildings and other improvements. The parties contemplated that the lease could run for 115 years, if the renewal option were exercised by the Lessees.

The lease contained a number of provisions, four of which we deem of particular importance, and which will be referred to hereinafter by the numbers set forth below. Page references are to the lease.

1.    Paragraph (b) at page 10 provides that if the Lessees are not in default at the end of ten (10) years from January 1, 1954, they shall have the right to purchase the property at an agreed price, or failing agreement, at a price to be set by appraisal. The price to be set by appraisal would be the "market value of the demised land exclusive of buildings . . . ."

2.    Paragraph 13 provides that the Lessees will construct a new first-class building suitable for hotel or apartments costing not less than $100,000 within fifteen (15) years after

the commencement of the term of the lease.

3. Paragraph (c) on page 14 provides that after the construction of the said building, the Lessees shall have the right to surrender the lease and improvement and be relieved of any further obligations under the lease.

4. Paragraph (a) at page 13 provides that in the event that the Lessor shall desire to sell the property, the Lessees shall be given a 60-day right of first refusal.

The first issue which we must decide is whether the Lessees timely exercised their option to purchase under the lease. There is no dispute that the Lessees were not in default at the end of the ten-year period commencing January 1, 1954; *i.e.*, on January 1, 1964. They did not, however, attempt to exercise their option to purchase until July 29, 1969, more than five and one-half years after the option period began to run. Provision 1 (Paragraph (b) on page 10 of the lease) does not set an expiration date for the option to purchase.

Lessees argue that in the absence of a cut-off date, the option remains open during the entire term of the lease. Lessor counters that where no expiration date is stated, the option must be exercised on the option date or within a reasonable time thereafter, urging that as a matter of law, five and one-half years is not a "reasonable time." In the alternative, they contend that it is at least a question of fact whether a reasonable time had elapsed; ergo, summary judgment was improper.

Counsel for both parties have cited numerous cases purportedly supporting their respective positions. One rule emerges from these otherwise seemingly conflicting cases—that what is "a reasonable time" depends on the facts and circumstances of the particular case, not the least of which is the language of the lease. What this court must ascertain is the intent of the parties when they entered into the lease. *Lathrop v. Wood*, 1 Haw. 121 (1852).

> To gather the probable intent of the parties, we must interpret the lease as a whole and interpret writings of the same transaction together. (Citations omitted) . . . In construing a lease we must avoid an unreasonable

interpretation if that can be done consistently with the tenor of the agreement and choose the most obviously just interpretation as the presumed intent. *Broida v. Hayashi*, 51 Haw. 493, 495-96, 464 P.2d 285 (1970).

The Lessees were required under provision 2 to have completed a $100,000 hotel or apartment building no later than 15 years after the commencement of the term of the lease, or by January 1, 1969. Construction had not yet even commenced by July 29, 1969, when they attempted to exercise the option to purchase. That they were then in clear violation of their covenant to construct cannot be challenged.

Conceivably, under different circumstances and under differing language, what constitutes a reasonable time within which to exercise an option to purchase may encompass a five and one-half year, or even longer, period. Where, as here, however, the Lessees were additionally in default of a major covenant (as contrasted, for example, with being delinquent in one or two months' rent, accompanied by an offer to remedy the same with the proper tender) at the time it attempted to exercise its purchase option, we deem that a reasonable time had already expired as a matter of law.

It might be asked, what if there had been no default of the building covenant or only one year had elapsed from the time when the option period began? The answer would probably be that the trier of the facts must then determine whether the period to elect to purchase had terminated prior to any attempted election.

Our conclusion is in accord with provisions 3 and 4 cited *supra*. Provision 3 permits the Lessees to surrender the lease and the improvement and be relieved of further obligation after construction of the building. Lessees take the position that they have the option of either constructing the building and being relieved of the continuing obligation to pay rental on the property, or exercising its option to purchase and assuming the obligation of paying Lessor for her reversionary interest.

Construing the lease in its entirety, as we must, we reach the following conclusions:

1.   As stated above, Lessees had the option to purchase the demised premises beginning January 1, 1964, and for a reasonable period of time thereafter, at an agreed or appraised value.

2.   Lessees were required to construct a $100,000 hotel or apartment building by January 1, 1969.

3.   If Lessees had complied with the construction covenant, they would then have the right to surrender the leasehold premises, with the improvements, and be relieved of any further obligations under the lease. Conversely, by failing even to attempt to comply with the construction covenant, under the record on appeal, their right to surrender and be relieved of further obligations under the lease vanished.

The right of first refusal granted to Lessees cannot be equated with the option to purchase. The latter had to be exercised within a reasonable time, after the Lessees earned such right by not being in default on January 1, 1964. Upon failure to exercise the option to purchase after passage of a reasonable time (as we have here determined to have happened under the facts of the case), the right of first refusal may nevertheless remain viable. The two rights are therefore not necessarily identical. The option to purchase, besides being of limited duration, was to be exercised at an agreed price; or upon failure of the parties to agree, then upon the appraised value of the property, with a minimum set price.

Under the right of first refusal, however, it would appear that at any time the Lessor desired to sell her interest in the demised premises, she must first offer the same to the Lessees, at a price set by her. Lessees would then have the right to either accept or reject such offer. If the Lessees refused such offer, the Lessor would be free to sell to any third party on the same terms and conditions. If such offer to sell were made by the Lessor immediately at the end of the first ten-year period (the Lessees not then being in default) or within a reasonable time thereafter, Lessees' argument that the provision granting them the first refusal would be meaningless might be well taken, since they could then

have exercised their option to purchase. Given the circumstances of the case, however, when the reasonable period to exercise the option expired, the provision granting Lessees the first refusal to purchase matured.[1]

We accordingly reverse and hold that summary judgment should have been granted in the Lessor's favor.

With respect to the second issue, the dismissal of Lessor's amended complaint for damages, we cannot say that as a matter of law the Lessor suffered no damages as a consequence of Lessees' breach of the covenant to construct the $100,000 building.

Reversed and remanded for entry of summary judgment in favor of Lessor in accordance with this opinion and for determination of damages, if any.

*Frank D. Padgett (John F. Lezak* with him on the reply brief, *Padgett, Greeley, Marumoto & Steiner* of counsel) for plaintiff-appellant.

*Howard K. Hoddick* and *John A. Hoskins (Anthony, Hoddick, Reinwald & O'Connor* of counsel) for defendants-appellees.

---

[1]Query, what if the Lessor attempted to sell her interest prior to the end of the ten-year period? Could she invoke the first refusal provision and set a price in excess of the appraised value if Lessees elected to purchase at the lower appraised value, despite the fact that the election to purchase was not to be effective until the end of the tenth year? We need not answer this question as it does not arise under the actual circumstances of the case.

CONCURRING OPINION OF ABE, J.

The majority of this court has reversed the judgment of the trial court and I concur with the result, although I disagree with its reasoning.

The option paragraph which is in question reads as follows:

> "*Option to purchase*. That if at the end of ten (10) years from January 1, 1954, the Lessees shall not be in default hereunder they shall have the right to purchase said property at a mutually agreed price and if said price cannot be determined by the agreement of the parties hereto, it shall be set by appraisal in the manner hereinbefore provided but in no case shall the sale price be less than SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00) net to the Lessor; . . . ."

I do not agree with this court's interpretation that the paragraph provides that "if the Lessees are not in default at the end of ten (10) years from January 1, 1954, they shall have the right to purchase the property at an agreed price, or failing agreement, at a price to be set by appraisal. The price to be set by appraisal would be the 'market value of the demised land exclusive of buildings. . . .' " And that the lessees have the right to exercise the option on January 1, 1964 or within a reasonable time thereafter.

On the other hand the lessees contend that the paragraph above mentioned gave them a continuing option to purchase the premises to be exercised at any time after January 1, 1964 for the remainder of the lease term provided the lessees were not in default on January 1, 1964.

I cannot agree with the constructions given the paragraph by this court or the lessees. To me it is clear that the condition precedent to the lessees' right to exercise the option to purchase is that the "Lessees shall not be in default" under the terms, conditions or covenants of the lease. The record shows that at the time the lessees attempted to exercise the option to purchase they were in default of the covenant to construct a new first-class building suitable for hotel or

apartment costing not less than $100,000. Thus, the lessees not having satisfied the condition precedent they had no right to exercise the option to purchase. *Jones v. United States,* 96 U.S. 24, 27 (1877).

Under the decision of this court the important issue is whether the option to purchase was exercised within a reasonable time. The question of what is a reasonable time under the circumstances of a particular case is generally a question of fact. *Lucas v. Swan,* 67 F.2d 106, 110 (4th Cir. 1933); *Victorson v. Albert M. Green Hosiery Mills,* 202 F.2d 717, 719 (3d Cir. 1953); *Alpern v. Mayfair Markets,* 118 Cal. App. 2d 541, 547, 258 P.2d 7, 10 (1953). I cannot agree with this court's holding that under the record of this case the question whether the option to purchase was exercised within a reasonable time was a question of law which may be determined by this court.